IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**CITY OF CANTON, Mayor William Truly, Jr.,**
**Alderwoman Alice Scott, Aldermen Rodriguez Brown,**
**Billy Myers, Charles Weems, Louis Smith,**
**Reuben Myers and Erick Gilkey**                                          **PLAINTIFFS**

**VS.**                                          **CIVIL ACTION NO.:  3:11cv00318-CWR-LRA**

**NISSAN NORTH AMERICA, INC.**                                          **DEFENDANT**

**and**

**JIM HOOD, ATTORNEY GENERAL FOR THE**
**STATE OF MISSISSIPPI, EX REL. THE STATE OF MISSISSIPPI**                **INTERVENOR**

**MEMORANDUM OF AUTHORITIES IN SUPPORT OF DEFENDANT**
**NISSAN NORTH AMERICA, INC.'S MOTION**
**FOR JUDGMENT ON THE PLEADINGS**

Defendant Nissan North America, Inc. ("Nissan") submits this Memorandum of

Authorities in support of its Motion for Judgment on the Pleadings under Rule 12(c) of the

Federal Rules of Civil Procedure.  Through its Rule 12(c) Motion, Nissan seeks a judgment in its

favor on all claims asserted against it in the First Amended Complaint for Declaratory Judgment

filed in this action by Plaintiffs City of Canton, Mayor William Truly, Jr., Alderwoman Alice

Scott, Aldermen Rodriguez Brown, Billy Myers, Charles Weems, Louis Smith, Reuben Myers

and Erick Gilkey (collectively "Canton",  the "City" or the "City of Canton").

## I.  INTRODUCTION

This declaratory judgment action raises an issue that has far-reaching implications for

economic growth and development in Mississippi.  The City of Canton seeks to invalidate its

agreement, which it entered into in 2000, not to annex the site of Nissan's automobile

1

manufacturing plant in Madison County, Mississippi for a period of thirty (30) years. That agreement was made by Canton at a time when Nissan was considering whether to invest approximately $1 billion in private capital to build a plant that was anticipated to create at least 3,000 new jobs in Mississippi. Canton's agreement, along with incentives provided by the State of Mississippi and other local governments, encouraged Nissan to make the decision to build its plant in Madison County as opposed to other possible locations. In addition to building its plant near the City of Canton, Nissan agreed to make annual payments to Canton for the support of Canton's public schools.

Canton's agreement not to annex Nissan's plant is specifically authorized by a general statute passed by the Mississippi Legislature as House Bill No. 1, Third Extraordinary Session, 2000 ("the Act"). The Act amended various Mississippi statutes, including, but not limited to, the Mississippi Major Economic Impact Act, a broad economic development program designed to encourage large capital investment and job creation in Mississippi. The Act also amended Miss. Code Ann. § 21-1-59 to specifically authorize the agreement that is the subject of this action.

Ten years later, Canton now seeks to invalidate its own agreement – an agreement that was not compulsory, but one that was freely and voluntarily made. Canton suggests that its decision-making authority has been impaired and its rights violated. To the contrary, pursuant to the Act, the Mississippi Legislature simply provided Canton and similarly situated municipalities with the specific power to enter into long-term non-annexation agreements to encourage economic development. Canton voluntarily exercised that statutorily-created power in order to obtain substantial economic benefits which, in fact, have been obtained.

2

Permitting Canton to breach the terms of its agreement would do great harm to Nissan and to Mississippi's economic development efforts.  The message to businesses seeking to locate in Mississippi, and to those states competing with Mississippi, would be clear:  Economic development incentives offered in Mississippi, even if specifically authorized by statute, may be illusory and subject to change.

In this Motion, Nissan seeks a judgment dismissing all claims that the statute authorizing Canton's agreement, Miss. Code Ann. § 25-1-59(2), is unconstitutional.  Further, the Court should find that Canton's agreement is valid and enforceable as a matter of law and dismiss the First Amended Complaint with prejudice.

## II.  STATEMENT OF FACTS

On November 6, 2000, the Mississippi Legislature unanimously enacted the Act in a specially-called session of the Mississippi Legislature. *See* Ex. A, First Amended Complaint at ¶ 13.[1]  The Act was signed by the Governor and became effective that same day.  Part of the Act, Section 18(2), amended Miss. Code Ann. § 21-1-59 by adding the following as Section 21-1-59(2) to state:

> The governing authorities of a municipality *may* enter into an agreement with an enterprise operating a project as defined in Section 57-75-5(f)(iv)1 . . . providing that the municipality shall not change its boundaries so as to include within the limits of such municipality the project site of such a project unless consent thereto shall be obtained in writing from the enterprise operating the project.  Such agreement may be for a period not to exceed thirty (30) years.  Such agreement shall be binding on future governing authorities of such municipality.

(emphasis added).  A "project" is defined in the Act as "[a]ny major capital project with an initial capital investment from private sources of not less than Seven Hundred Fifty Million Dollars

---

[1] All exhibits referenced in this Memorandum of Authorities are attached to Nissan's Motion for Judgment on the Pleadings.

($750,000,000.00) which will create at least three thousand (3,000) new direct jobs meeting criteria established by the Mississippi Development Authority." Miss. Code Ann. § 57-75-5(f)(iv)1 (1972) (as amended). Canton does not dispute that Nissan's Canton Mississippi facility meets the statutory definition of "project" under the Act.

On November 6, 2000, Mr. James C. Burns, Jr., Executive Director of the Mississippi Development Authority, wrote a letter to then-Mayor of Canton, Alice Scott (who is one of the Plaintiffs in this action), noting that the State of Mississippi had been working with a significant industrial manufacturer regarding the possible location of a large manufacturing plant within Mississippi. *See* Ex. A, First Amended Complaint at Exhibit "B." Mr. Burns further stated that discussions with the manufacturer had centered on a site located in Madison County, Mississippi near the city limits of Canton.[2] *Id.* Burns also noted that negotiations with the manufacturer had included a broad array of incentives to be offered by the State of Mississippi and Madison County, but that some of the necessary incentives would involve Canton specifically. *Id.* Among others, these incentives included an agreement pursuant to Miss. Code Ann. § 21-1-59(2), as amended, not to change Canton's boundaries to include the proposed Nissan plant site. In this regard, Mr. Burns' letter directly informed Mayor Scott that Miss. Code Ann. § 21-1-59(2), as recently amended by the Act, gave Canton "the authority to agree to bind future city mayors and alderman to a thirty year moratorium on an annexation of the primary project site" and that the "primary site could not be annexed at any time during this thirty year period of time unless the project officials request the City of Canton in writing to annex the primary site." *Id.* Mr. Burns further informed Mayor Scott that, as part of any such agreement, Nissan would enter into an ad valorem tax agreement pursuant to which Nissan would pay a fee in lieu of ad valorem taxes,

---

[2] At that time, the Nissan manufacturing facility was known as "Project Delta." Ex. A, First Amended Complaint at Exhibit "B."

4

which would be used, among other things, for the support of Canton's Municipal School District. *Id.* On the signature line provided, Mayor Scott, on behalf of the City of Canton, signed Mr. Burns' letter indicating the City's acceptance of the terms set forth therein. *Id.*

The next day, Mayor Scott and the Canton Board of Aldermen unanimously passed two resolutions. Ex. A, First Amended Complaint at Exhibit "A." One resolution, to which Mr. Burns' letter was attached, stated that "as an inducement for the location of said plant in said location, [Nissan] has requested the City of Canton, Madison County, State of Mississippi to provide certain financial incentives, as well as make certain commitments . . . ." The resolution further stated "that the City fully supports Project Delta and agrees, upon application in the time and manner required by law, to grant and approve each of the commitments enumerated" in Mr. Burn's letter. Ex. A, First Amended Complaint at Exhibit "A."

The second resolution was entitled:

> "RESOLUTION AGREEING THAT THE CITY OF CANTON, MS WILL NOT CHANGE ITS BOUNDARIES FOR A PERIOD OF AT LEAST THIRTY (30) YEARS SO AS TO INCLUDE WITHIN THE CORPORATE LIMITS OF THE CITY THE SITE OF A PROJECT DESCRIBED IN SECTION 57-75-5(IV)(1), MISS. CODE OF 1972, AS AMENDED AND RELATED MATTERS."

That resolution specifically noted that "[p]ursuant to Section 18(2) of the Act, a municipality *is authorized to agree* that said municipality will not change its boundaries for a period of up to thirty years so as to include within the limits of such municipality the site of a project, as defined in Sections 57-75-5(f)(iv)1 and 57-75-5(g) . . . ." Ex. A, First Amended Complaint at Exhibit "A." (emphasis added). The resolution further found "that Nissan North America, Inc. . . . will operate a Project in Madison County presently located outside the corporate boundaries of the City of Canton, Mississippi" and that "in connection with such Project the Municipality will

5

hereafter enter into an agreement . . . pursuant to which the Company will agree to pay to the Municipality a fee in lieu of ad valorem taxes, which payment shall be for Canton Municipal School District purposes." Ex. A, First Amended Complaint at Exhibit "A." The Mayor and Board of Alderman then resolved as follows:

> SECTION 1. The Governing Body of the Municipality hereby agrees that the Municipality will not change its boundaries for a period of at least thirty (30) years from the date hereof so as to include within the corporate limits of the Municipality the site of the Project which is anticipated to be operated by the Company, its successors and assigns, unless consent thereto shall be obtained in writing from the Company, its successors and assigns.
>
> SECTION 2. This resolution shall constitute an "agreement" as that term is used in Section 18(2) of the Act.
>
> SECTION 3. This resolution may not be revoked without the consent of the operator of the Project.
>
> SECTION 4. All prior orders, resolutions or proceedings of the Governing Body in conflict with the provisions of this resolution are hereby repealed, rescinded and set aside, but only to the extent of such conflict. For cause, this resolution shall become effective immediately upon the adoption thereof.

*Id.*

Based on the Mayor and Board of Aldermen's agreement to these terms and conditions, and based on the resolutions that had been passed and adopted on behalf of the City of Canton, Nissan built and then began operation of a major automobile manufacturing facility in Madison County, Mississippi located outside of the municipal boundaries of the City of Canton. Further, as stated in the first resolution referenced above, Canton later entered into an agreement with Nissan entitled "Agreement to Make Payments in Lieu of Ad Valorem Taxes" effective April 23, 2003.[3] That agreement was signed by then-Mayor Fred Esco, Jr. and City Clerk Valerie Smith

---

[3] The Agreement to Make Payments in Lieu of Ad Valorem Taxes, which was executed by Canton's Mayor and City Clerk, is attached to Nissan's Motion for Judgment on the Pleadings as Ex. B. In considering a motion to dismiss,

6

on behalf of the City of Canton. *Id.* It required Nissan to make annual payments for the support of the Canton Municipal School District. *Id.*

Nissan has never requested nor consented to the enlargement of Canton's municipal boundaries to include the Nissan plant site.

On February 11, 2011, the Mayor and Board of Aldermen for the City of Canton voted to authorize a lawsuit to determine whether Canton is bound by its agreement not to seek to enlarge its municipal boundaries to include the Nissan plant site for a period of thirty (30) years. Thereafter, this lawsuit was filed.  Through this action, Canton seeks a declaration that the Act and/or the non-annexation agreement violate certain provisions of the United States Constitution, Mississippi Constitution, and other provisions of Mississippi law.  *See* Ex. A, First Amended Complaint at ¶ 18.

### III.   ARGUMENT

**A.      Standard For Granting A Rule 12(C) Motion For Judgment On The Pleadings.**

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." A motion for judgment on the pleadings under Rule 12(c) is decided under the same standard used for a motion to dismiss under Rule 12(b)(6).  *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n.8 (5th Cir 2002).  A complaint must be dismissed under Rule 12(b)(6), and, therefore, under Rule 12(c), unless it contains sufficient facts to "raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

---

the Court may take judicial notice of this public record.  *See Dalfrey v. Boss Hoss Cycles, Inc.*, 2011 WL 4931166, *3 (5th Cir. 2011); *McDonald v. Citizens Bank of Philadelphia*, 2011 WL 3876976, *1, n.1 (S.D. Miss. 2011).

(2007).[4]  As the Supreme Court of the United States held in *Twombly*, a complaint does not pass muster if it contains no more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* at 555-56.  Thus, "where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (internal quotations omitted).

Moreover, even if a plaintiff meets the pleading standard of *Twombly* and *Iqbal*, dismissal pursuant to Rule 12(c) is still required where the plaintiff's claims are legally defective as a matter of law.  As the United States Court of Appeals for the Fifth Circuit has noted, "[w]hen a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate," *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).  Thus, where a complaint raises a question of law the Court finds lacks merit, dismissal under Rule 12(c) is likewise mandated.

**B.     Judgment Should Be Rendered In Favor Of Nissan Under Rule 12(c).**

Applying the Rule 12(c) standard here, the Court must find that none of the legal questions presented by Canton's First Amended Complaint have merit.  Plaintiffs' First Amended Complaint fails to allege any set of facts that would raise its right to relief above the level of mere speculation.  Moreover, all questions of law presented by the First Amended Complaint lack merit, and Canton has failed to present any legally viable basis for the relief it seeks.

---

[4] Once a case has been removed to federal court, federal law, and not state law, provides the standard for the specificity of a pleading.  *Trotter v. Eli Lilly*, 2006 U.S. Dist. LEXIS 53902, *2-3 (S.D. Miss. Aug. 2, 2006) (quoting *Hanna v. Plumer*, 380 U.S. 460 (1965)).

4176508.1/10826.37353

In its First Amended Complaint, Canton asserts a right to declaratory relief based on four separate theories.  First, Canton asserts that its agreement not to change its municipal boundaries for a period of thirty (30) years to include the Nissan plant site illegally restricts Canton's municipal decision-making authority.  Second, Canton contends that the statute authorizing the agreement, Miss. Code Ann. § 21-1-59(2), violates Canton's Due Process and Equal Protection rights under the Fourteenth Amendment to the United States Constitution and its counterpart in the Mississippi Constitution.  Third, Canton argues the statute is an improper local or private law in violation of Mississippi Constitution Article IV, §§ 87 and 90(h).  Finally, Canton contends that its agreement lacks consideration and therefore violates Article IV, Section 96 of the Mississippi Constitution and/or is unconscionable, ultra vires and against public policy.  As Nissan will show, each of these arguments fail as a matter of law, and judgment therefore should be rendered in favor of Nissan on all claims asserted in Plaintiffs' First Amended Complaint.

1.      **Canton's Non-Annexation Agreement Is Authorized By Law And Does Not Impermissibly Restrict Its Decision-Making Authority.**

Canton asserts that its agreement not to change its municipal boundaries to include the Nissan plant site for a period of thirty (30) years is an impermissible restriction on its municipal decision-making authority.  Canton argues that governing bodies of a municipality cannot be bound by a former governing body's agreement that extends beyond the term of the former body. Ex. A, First Amended Complaint at ¶ 18a, c, h & i.  However, Canton's argument fundamentally misstates its rights and authority as a municipal entity.  Canton, as a municipality, is a creature of statute, and its rights are limited to those expressly granted by statute and those inherently necessary to carry out its enumerated statutory duties.  Mississippi law has long recognized that public entities created by legislative acts, such as municipalities, only have such powers and authority as are expressly conferred by law, or as arise by necessary implication. *See Golding v.*

9

*Salter*, 107 So. 2d 348, 354 (Miss. 1958); *see also Mayor & Bd. of Aldermen of City of Natchez v. Engle*, 51 So. 2d 564, 569 (Miss. 1951). Thus, because Canton's municipal rights were created by the Mississippi Legislature, those rights can be subsequently amended or altered by the Mississippi Legislature. Any argument to the contrary is inconsistent with settled Mississippi law.

Section 21-1-59(2) of the Mississippi Code specifically authorizes a municipal governing body to agree not to annex the sites of certain economic development projects for a period of up to thirty (30) years. The statute clearly provides that such agreement binds future municipal boards by operation of law. In its original Complaint for Declaratory Judgment, Canton cited common law cases for the general proposition that decisions of a municipal board may not bind a future board. *See Biloxi Firefighters Ass'n v. City of Biloxi*, 810 So. 2d 589, 592 (Miss. 2002) (applying common law to hold that current board of aldermen not bound by prior board's collective bargaining agreement); *ECO Resources, Inc. v. City of Horn Lake*, 640 F. Supp. 2d 826, 831 (N.D. Miss. 2009) ("Mississippi common law provides that a governing municipal board does not have the authority to bind a municipality to a contract beyond the term of that board."); *In re Municipal Boundaries of City of Southaven*, 864 So. 2d 912, 917 n.2 (Miss. 2003) (noting that "*unless the statute conferring power to contract clearly authorizes the council to make a contract extending beyond its own terms*, no power of the council so to do exists . . . ." and holding that agreement not to annex was unenforceable where no such statute existed (emphasis added)). Those common law cases, however, are inapplicable because the common law is superseded in this instance by Miss. Code Ann. § 21-1-59(2), which specifically states that a municipality's agreement not to annex certain property within the provisions of Section 21-1-59(2) **"shall be binding on future governing authorities of such municipality."** (emphasis

added). Mississippi law is clear that the Mississippi Legislature has the power to abrogate the common law, and when it has done so, "the common law must give way to statutes." *L.W. v. McComb Separate Municipal School Dist.*, 754 So. 2d 1136, 1140 (Miss. 1999), *overruled in part on other grounds, Mississippi Transportation Com'n v. Montgomery*, ____ So. 3d ____, 2011 WL 4634998, ¶ 25 (Miss. 2011); *see also Cox v. Trustmark Nat. Bank,* 733 So. 2d 353, 356 (Miss. App. 1999) ("The common law remains in effect *until repealed by statute* . . . ." (emphasis added)); *Tuggle v. Williamson,* 450 So. 2d 93, 95 (Miss. 1984) ("Mississippi follows the common law rule except where changed by statute.").

Here, there is no question that the Mississippi Legislature abrogated the common law provision that a governing board may not bind a municipality to a contract beyond the term of that board.  The agreement in question conforms to the Mississippi Legislature's will and mandate as set forth in Section 21-1-59(2) and is binding on the current Mayor and Board of Aldermen of the City of Canton.  In short, Canton's agreement in 2000 not to annex the Nissan plant site is binding on future governing bodies of the City because the Mississippi Legislature so provided in clear and unambiguous terms.

To be sure, the Mississippi Legislature's enactment of Miss. Code Ann. § 21-1-59(2) was not an isolated instance of the Legislature creating statutory rights that override the common law. The Mississippi Legislature has altered the common law rights of municipalities on numerous occasions. *See, e.g.,* Miss. Code Ann. §§ 21-19-43 (municipalities may exempt certain property from taxation for up to ten years for business development purposes); 21-27-7 (erection and maintenance of waterworks up to twenty-five years); 21-27-45 (one bond issuance statute, among many); 21-37-15 (leasing and permitting of wharfs up to twenty-five years); 21-37-53 & 21-38-5 (leasing certain municipal-owned property up to seventy-five years); §§ 21-27-3 and 21-

11

27-5 (grant of right of way for up to 25 years).   Indeed, the Mississippi Code is filled with statutes that alter the common law rights of municipalities by allowing a municipal governing board to enter into contracts of such duration that they will bind future governing boards. Carried to its logical conclusion, Canton's argument would lead to the absurd result that these other statutes must fail as well.  There is neither law nor logic to support such result. Instead, this Court must conclude that, consistent with existing legal authority in *L.W., Cox, and Tuggle*, the Legislature may alter the common law rights of a municipality to allow' it to enter into agreements that bind future governing boards. Pursuant to Miss. Code Ann. § 21-1-59(2), Canton was authorized to agree not to annex the Nissan project site for a period of thirty years and its agreement did not impermissibly restrict the decision-making authority of future governing boards.   Therefore, Canton's claims based upon this theory fail, and Nissan is entitled to judgment as a matter of law.

2.   **Miss. Code Ann. § 21-1-59(2) Does Not Violate The Fourteenth Amendment To The United States Constitution Or Its Counterpart In The Mississippi Constitution.**

Canton next asserts that Miss. Code Ann. § 21-1-59(2) violates its Fourteenth Amendment rights under the United States Constitution and equivalent rights under the Mississippi Constitution.  Ex. A, First Amended Complaint at ¶ 18 b, d, and g.  Specifically, Canton asserts that the statute violates its equal protection and due process rights.  Yet it is clear that municipalities have no such rights.  Therefore, no matter what set of facts Canton may allege, these claims fail as a matter of law.

The Fourteenth Amendment of the United States Constitution states:

"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive *any person* of life, liberty, or property, without

12

> due process of law; nor deny to *any person* within its jurisdiction the equal protection of the laws."

U.S. Const. Amend. XIV, § 1 (emphasis added).  As clearly established by the language of the Fourteenth Amendment itself, Canton's claim fails as a matter of law for a very fundamental and simple reason -- a municipality is not a "person" within the meaning of the Fourteenth Amendment, and a municipality lacks the capacity to bring suit challenging the constitutionality of a state statute under the Fourteenth Amendment.

In the seminal case on this issue, *City of Trenton v. State of New Jersey,* 262 U.S. 182, 191 (1923), the state of New Jersey brought suit against the city of Trenton to recover a statutorily-authorized payment for water usage.  Trenton defended on the basis that the statute authorizing payment violated the Fourteenth Amendment of the United States Constitution. *Id.* The Supreme Court found that Trenton was not a person under the Fourteenth Amendment and could not bring a constitutional claim against the State. *Id.*  Consistent with *Trenton,* other courts have applied this rule to bar a city from bringing a declaratory judgment action seeking a declaration that a state statute violated the Fourteenth Amendment. *See, e.g., East Jackson Public Schools v. State,* 348 N.W.2d 303, 306-07 (Mich. App. 1984).

The Mississippi Supreme Court considered this federal constitutional issue in *State v. Hinds County Bd. of Sup'rs,* 635 So. 2d 839, 843 (Miss. 1994).  There, Hinds County sued the state of Mississippi for damages, injunctive relief, and declaratory relief on the grounds that the state's reimbursement plan for the cost of housing inmates in jail was inadequate and constituted a violation of its Fourteenth Amendment rights. *Id.*  The Court held that Hinds County had "no Fifth or Fourteenth Amendment protections against the state." *Id.* at 843 (citing *City of Trenton v. State of New Jersey,* 262 U.S. 182 (1923); *Board of Levee Commissioners of the Orleans Levee Board v. Huls,* 852 F.2d 140, 142-43 (5th Cir. 1988)).  Therefore, the Court held that

13

Hinds County had no Fourteenth Amendment rights to be violated and that the claim should have been dismissed. *Id.* at 843-44.

This bar against Canton's federal constitutional claims applies equally to its claims based on Article III, Section Fourteen of the Mississippi Constitution.[5] *See Mississippi Power Co. v. Goudy*, 459 So. 2d 257, 275 (Miss. 1984) (holding Section Fourteen of the Mississippi Constitution is co-extensive and interpreted in the same way as the Fourteenth Amendment to the United States Constitution). In *Cities of Oxford, Carthage, Louisville, Starkville and Tupelo v. Northeast Mississippi Elec. Power Ass'n*, 704 So. 2d 59, 61 (Miss. 1997), the Mississippi Supreme Court considered whether a municipality could bring claims under Article III, Section Fourteen of the Mississippi Constitution. There, a group of municipalities brought a declaratory judgment action against a utility company seeking a declaration that amendments to the Public Utilities Act were unconstitutional under both the state and federal constitution. The Court held that the municipalities lacked the capacity under either the federal or state constitution to bring a due process challenge to the statute because they were "prevented from attacking the constitutionality of state legislation on the grounds that its own rights have been impaired." *Id.* at 67 (quoting *South Macomb Disposal Authority v. Township of Washington*, 790 F.2d 500, 504 (6th Cir. 1986)).

Thus, under a long line of state and federal cases interpreting the Fourteenth Amendment to the United States Constitution and Article III, Section Fourteen of the Mississippi Constitution, Canton's challenges to Miss. Code Ann. § 21-1-59(2) are plainly barred. The City of Canton is not a person within the meaning of either constitution, thus it has no due process or

---

[5] Mississippi's Constitution provides: "No *person* shall be deprived of life, liberty, or property except by due process of law." Miss. Const., Art. III, § 14 (emphasis added).

equal protection rights to be protected.  Nissan is entitled to judgment on the pleadings with respect to those constitutional claims.

### 3.     Miss. Code Ann. § 21-1-59(2) Does Not Violate Mississippi Const. Art. IV § 87 Or § 90(h).

Canton next claims that Miss. Code Ann. § 21-1-59(2) is a local or special law that violates Mississippi Constitution, Article IV, § 87 and § 90(h).  Ex. A, First Amended Complaint at ¶ 18 e, f.  To show that the statute violates the Mississippi Constitution, Canton carries an extremely high burden of proof.  "Statutes under constitutional attack have a strong presumption of validity, and that presumption is overcome only with a showing of unconstitutionality beyond a reasonable doubt." *Hill v. State*, 853 So. 2d 100, 103 (Miss. 2003) (citing *Dillard v. Musgrove*, 838 So. 2d 261, 264 (Miss. 2003); *State v. Quitman County*, 807 So. 2d 401, 406 (Miss. 2001); *Richmond v. State*, 751 So. 2d 1038, 1047 (Miss. 1999); *Genry v. State*, 735 So. 2d 186, 199 (Miss. 1999); *Nicholson on Behalf of Gollott v. State*, 672 So. 2d 744, 750-51 (Miss. 1996)).  As a matter of law, Canton has not pled and cannot prove any set of facts showing beyond a reasonable doubt that Miss. Code Ann. § 21-1-59(2) violates Mississippi Constitution, Article IV, § 87 or § 90(h).  Indeed, a cursory review of Miss. Code Ann. § 21-1-59(2) clearly establishes that it is *not* a local or special law and does not violate the Mississippi Constitution.

Section 87 of Article IV of the Mississippi Constitution provides:

> "No special or local law shall be enacted for the benefit of individuals or corporations, in cases which are or can be provided for by general law, or where the relief sought can be given by any court of this State; nor shall the operation of any general law be suspended by the Legislature for the benefit of any individual or private corporation or association, and in all cases where a general law can be made applicable, and would be advantageous, no special law shall be enacted."

Section 90(h) of Article IV provides that the legislature shall not pass local, private, or special laws . . . exempting "property from taxation or from levy or sale." It is important to note that both constitutional provisions are directed at, and place limits upon, the enactment and application of local or special laws. Those two provisions do not impose any restrictions on the application of general laws enacted by the Mississippi Legislature. Therefore, the threshold determination is whether Miss. Code Ann. § 21-1-59(2) is a general, as opposed to a local or special, law. If it is a general law, it does not fall within the provisions of Sections 87 or 90(h) of Article IV and therefore cannot be in violation of those sections.

Even a cursory review of Section 25-1-59(2) reveals that it is a general law with broad application throughout Mississippi. Miss. Code Ann. § 21-1-59(2) operates uniformly upon all "enterprises" that meet the economic development criteria of the Act. It allows any Mississippi municipality to determine, solely in the municipality's discretion, whether it wishes to agree not to annex any statutorily-defined "project" for a period of up to thirty (30) years. As such, it is a general law which "operates uniformly on all members of a class of persons, places or things requiring legislation peculiar to that class." *Secretary of State v. Wiesenberg*, 633 So. 2d 983, 995 (Miss. 1994) (citing *State ex rel. Jordan v. Gilmer Grocery Co.*, 125 So. 710, 717 (Miss. 1930)).

Unlike general laws, special laws apply only to particular persons or things within a class. *Haas v. Hancock County*, 184 So. 812, 813 (Miss. 1938). Section 21-1-59(2) is not a special law because it does not apply solely and exclusively to Nissan, but applies to all "enterprises" operating a "project" as defined by the statute. Any company that invests at least $750 million in private capital in a project that creates at least 3,000 new direct jobs may obtain the benefit of a non-annexation agreement if the municipality chooses to enter into such agreement.

Similarly, Section 21-1-59(2) is not a local law. The statute is not limited in geographical application. It does not apply only to a person or persons within a narrow geographical area. *See Haas v. Hancock County*, 184 So. 812, 813 (Miss. 1938). Instead, the statute has application throughout the entire state of Mississippi. It applies to any "enterprise" meeting the economic development criteria for a "project" located anywhere in Mississippi. Therefore, it is not a local law that violates either Section 87 or 90(h) of the Mississippi Constitution.

The Mississippi Supreme Court's decision in *Burrell v. Miss. State Tax Com'n*, 536 So. 2d 848, 862 (Miss. 1988) is particularly instructive and is controlling on this issue. There, taxpayers challenged legislation exempting certain nuclear power plants from ad valorem taxation as an unconstitutional local or special law. *Id.* at 851. The *Burrell* Court held that the legislation at issue was general, not special or local, despite there being only one nuclear power plant at that time that fell within the law's classification. *Id.* at 862. The Court found that the statute was general because it was drafted so that any subsequent nuclear power plants within the definition of the class would be brought into the "predicament" of the law. *Id.*; *see also City of Jackson v. Deposit Guaranty Bank & Trust Co.*, 133 So. 195 (Miss. 1931) (holding that law enacted in the face of financial crisis exempting certain bank capital from taxes was general); *Wiesenberg*, 633 So. 2d at 995 (holding that Tidelands Act, although appearing local in nature, was a general law because the issue the legislature sought to address was for the benefit of the entire state.). Likewise, Section 18(2) of the Act is not local in nature. It was passed for the benefit of the entire state and allows such agreements to be made by *any municipality* regarding *any project* meeting the definition of Miss. Code Ann. § 57-75-5(f)(iv)1. Thus, the statute contemplates the development of future projects that may fall within its provisions, and section 18(2) would apply to any future projects meeting the definition of Miss. Code Ann. § 57-75-

17

5(f)(iv)1. Therefore, under *Burrell*'s reasoning, Miss. Code § 21-1-59(2) is a general law and does not violate the Mississippi Constitution's limitations on the enactment of local or special laws.

In addition, the Court should give deference to the Mississippi Legislature's classification of the statute at issue. The *Burrell* Court observed: "In cases dealing with classifications drawn by the legislature in statutes and laws, we have said: 'The question of classification is one primarily for the legislature, and in the exercise of this power the legislature possesses a wide discretion. We have also held in view of the presumptions in favor of a legislative judgment as to classification, *the legislative judgment will be upheld if any state of facts can reasonably be conceived to sustain it, and can be overthrown by the courts only when it is clearly erroneous.*'" *Id.* at 861 (quoting *Jackson Redevelopment Authority v. King, Inc.,* 364 So. 2d 1104, 1107-08 (Miss. 1978) (emphasis added in *Burrell*); citing *Board of Education of Benton County v. State Educational Finance Commission,* 243 Miss. 782, 814, 138 So. 2d 912, 926 (1962) and Comment, *General Special, Local and Private Legislation: A Mississippi Overview,* 56 Miss. L.J. 327, 334-46 (1986)). The Act was considered by the Mississippi Legislature, in its wide discretion, to be a general law. In Mississippi, all local and private legislation must be referred to and passed out of a standing committee for local and private legislation in each house of the legislature. Mississippi Const. Art. IV, § 89. Here, the Act was not referred to the standing local and private committee, but was referred to and passed out of the Ways and Means Committee in the House and the Finance Committee in the Senate. The Act was then passed by both the full House and Senate and approved by the Governor. The legislative history of the Act is attached to Nissan's Motion for Judgment on the Pleadings as Ex. C.[6] The Mississippi Legislature, in its

---

[6] The Court may take judicial notice of the legislative history of the Act, which is a matter of public record. *See Dalfrey,* 2011 WL 4931166 at *3; *McDonald,* 2011 WL 3876976 at *1, n.1.

18

wide discretion, deemed the Act to be a general law and a plain reading of the statute confirms that classification.

Although Section 25-1-59(2) is a general law and does not fall within the provisions of Sections 87 or 90(h), there are other reasons why the statute does not violate the Mississippi Constitution. First, "the operation of [a] general law [was not] suspended by the legislature for the benefit of any individual or private corporation or association . . . ". Miss. Const. Art. IV, § 87. The Mississippi Legislature did not suspend any general statute for the benefit of Nissan.

Furthermore, Section 21-1-59(2) did not provide for the "[e]xemption of property from taxation or from levy or sale." Miss. Const. Art. IV, § 90(h). Instead, the Act of which Section 21-1-59(2) was a part, provides a broad range of economic development incentives to encourage capital investment and to create jobs in Mississippi. Those incentives included the grant of authority to municipalities to enter into long-term non-annexation agreements in their discretion. The Act also authorized municipalities to enter into agreements to receive the payment of fees in lieu of ad valorem taxes. *See* Miss. Code Ann. § 27-31-104 (1972) (as amended). Nissan's property was not exempted from taxation by the provisions of Section 21-1-59(2). For these reasons, and others discussed above, Section 25-1-59(2) does not violate the Mississippi Constitution.

**4.     Canton's Agreement Is Not Otherwise Unenforceable Under Mississippi Law.**

Finally, Canton contends its agreement is unenforceable on the grounds that it is against public policy, is ultra vires, lacks consideration, and is unconscionable. Ex. A, First Amended Complaint at ¶ 18 c, j, k, l. Each of these claims lack legal merit and should be dismissed.

19

> **a.     Canton's Agreement Complies With Section 21-1-59(2) And Is Supported By Consideration.**

Canton asserts that "the agreement between the city of Canton and Nissan lacks adequate consideration and is thereby in violation of the Constitution of the State of Mississippi § 96." Ex. A, First Amended Complaint at ¶ 18 l.  This claim has no legal basis.  Section 21-1-59(2) does not require that any consideration be given to a municipality to give effect to the statutory mandate that "[s]uch agreement shall be binding on future governing authorities of such municipality."  Indeed, consideration for the non-annexation agreement is inherent in the statute. The non-annexation agreement is premised upon the successful completion of the economic development project and all the benefits it might provide.

Nevertheless, even if additional consideration is required, adequate consideration is reflected on the face of the pleadings in this case.  In its resolution, the Mayor and Board of Aldermen noted that Nissan had requested Canton to provide certain financial incentives "as an inducement for the location of said plant in said location. . . ." They further stated that "in connection with such Project the Municipality will hereafter enter into an agreement . . . pursuant to which the Company will agree to pay to the Municipality a fee in lieu of ad valorem taxes, which payment shall be for Canton Municipal School District purposes." Ex. A, First Amended Complaint at Exhibit "A." The Agreement to Make Payments in Lieu of Ad Valorem Taxes between Nissan, the Mississippi Development Authority, Madison County, City of Canton, and Madison County Tax Assessor, was authorized by Miss. Code Ann. § 27-31-104.  It was signed by the Mayor and City Clerk of the City of Canton and became effective on April 23, 2003.  As further demonstrated below, Nissan's agreement to build a major automobile plant and its Agreement to Make Payments in Lieu of Ad Valorem Taxes provided adequate consideration for Canton's non-annexation agreement.

4176508.1/10826.37353

The Mississippi Supreme Court has defined consideration as "a return promise, bargained for and given in exchange for the promise." *City of Starkville v. 4-County Elec. Power Ass'n,* 819 So. 2d 1216, 1220 (Miss. 2002) (citing *Lowndes Co-op. Ass'n v. Lipsey,* 126 So. 2d 276, 277-78 (Miss. 1961)). Here, in exchange for Canton's promise not to annex the plant site, Nissan invested not less than $750 million in private capital to build a major manufacturing facility in Madison County, thus creating at least 3,000 new direct jobs for residents of the State of Mississippi, Madison County and City of Canton. Furthermore, Nissan promised to execute (and did execute) an Agreement to Make Payments in Lieu of Ad Valorem Taxes, thus providing financial support for Canton's public schools. This exchange of promises -- promises that were fulfilled by Nissan -- is all that is needed to establish consideration. *Frierson v. Delta Outdoor, Inc.,* 794 So. 2d 220, 224 (Miss. 2001) ("All that is needed to constitute valid consideration to support a contract is a benefit to the promisor or a detriment to the promisee.").

Canton's challenge under Section 96 of the Mississippi Constitution is also meritless. Section 96 provides:

> "The Legislature shall never grant extra compensation, fee, or allowance, to any public officer, agent, servant, or contractor, after service rendered or contract made, nor authorize payment, or part payment, of any claim under any contract not authorized by law; but appropriations may be made for expenditures in repelling invasion, preventing or suppressing insurrections."

Miss. Const., Art. IV, § 96. This section has been interpreted to forbid a public body from payment of additional compensation after a public contract has been made. *See Covenant Health & Rehabilitation of Picayune, LP v. Lumpkin ex rel. Lumpkin,* 23 So. 3d 1092, 1097 (Miss. App. 2009); *Farrish Gravel Co., Inc. v. Mississippi State Highway Com'n,* 458 So. 2d 1066, 1069 (Miss. 1984). Here, no such "extra compensation" was given to anyone "after service rendered or contract made . . . ." Miss. Const. Art. IV, § 96. Also, no payment was made to

Nissan "under any contract not authorized by law . . . ." *Id.* Instead, as authorized by statute, Canton agreed not to annex the Nissan plant in exchange for Nissan's agreement to invest not less than $750 million in Madison County and create at least 3,000 new direct jobs. In addition, Nissan agreed to make annual fee payments in lieu of ad valorem taxes to support Canton's public schools. As a matter of law there was no compensation or payment to Nissan in violation of Section 96.

     **b.**     **Canton's Non-Annexation Agreement Is Not Unconscionable.**

     Canton's non-annexation agreement cannot be considered unconscionable as a matter of law. An agreement is unconscionable where there is "'an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to the other party.'" *Sawyers v. Herrin-Gear Chevrolet Co., Inc.*, 26 So. 3d 1026, 1034-35 (Miss. 2010) (quoting *Entergy Miss., Inc. v. Burdette Gin Co.*, 726 So. 2d 1202, 1207 (Miss. 1998)). Neither of these factors is present here. Canton did not lack a meaningful choice to enter into its agreement with Nissan. Indeed, Miss. Code Ann. § 21-1-59(2) makes clear that municipalities are authorized, but not required, to enter into such agreements. Moreover, as the exhibits to the First Amended Complaint attest, the Mississippi Development Authority did not require Canton to agree not to annex the plant site, nor did it have the power or authority to do so. The agreement not to annex the Nissan plant site, and duration of that agreement, was a matter determined solely in Canton's discretion. Moreover, the terms of the agreement provided substantial benefits to Canton and its citizens. As a result of the agreement, Nissan chose to invest not less than $750 million in Madison County, thereby creating at least 3,000 new jobs. Nissan's investment provided employment opportunities for Canton residents, growth opportunities to Canton businesses, and fostered other economic development activities within

the City and surrounding area.  Further, Nissan agreed to pay a significant fee in lieu of taxes to support Canton's public school system.  Under these circumstances, the City's agreement, which was expressly authorized by statute, cannot be considered unconscionable.

       **c.**      **Canton's Agreement Is Not Contrary To Public Policy.**

Finally, Canton asserts that both the statute and its non-annexation agreement are contrary to public policy and unenforceable.  Yet Canton's argument misses a fundamental point – the statute does not violate public policy because it is, in fact, a statement of public policy itself.  As the Mississippi Supreme Court has long recognized, "statutes are enactments of the public policy of this state." *Lanier v. State*, 635 So. 2d 813, 816-17 (Miss. 1994), *overruled in part on other grounds, Twillie v. State*, 892 So. 2d 187, 189 (Miss. 2004) (citing *Grisham v. Hinton,* 490 So. 2d 1201, 1209 (Miss. 1986) (Robertson, J., concurring)).  "Indeed, regarding invalidation of contracts on public policy grounds, this Court has said that the public policy of this state is 'found in its constitution and statutes, and when they have not directly spoken, then in the decisions of the courts and the constant practice of the government officials'." *Id.* (quoting *Cappaert v. Junker,* 413 So. 2d 378, 380 (Miss. 1982)).  The agreement at issue is specifically authorized by statute and therefore cannot be in violation of public policy.

Since the statute does not violate public policy, then the agreement Canton entered into pursuant to the statute does not violate public policy either.  The Mississippi Supreme Court has held, "[t]he function of the courts is to enforce contracts rather than enable parties to escape their obligation upon the pretext of public policy." *Smith v. Simon,* 224 So. 2d 565, 566 (Miss. 1969).  Canton should not be allowed to escape its obligations by relying on a baseless claim of a violation of public policy.  In fact, allowing Canton to escape its obligations under its agreement with Nissan would fundamentally contravene Mississippi's clearly expressed policy of seeking

to attract economic development to the state.  The invalidation of Canton's agreement not only would harm Nissan, it would significantly impair – perhaps irreparably cripple – economic development efforts in Mississippi.  The Court should enforce Canton's statutorily-authorized non-annexation agreement and dismiss all of Canton's claims with prejudice.

## IV.  CONCLUSION

For the foregoing reasons, judgment should be entered in favor of Nissan on all claims asserted against it by Plaintiffs and the First Amended Complaint should be dismissed with prejudice.  Further, all costs of this action should be assessed against Plaintiffs.

This the 20th day of February, 2012.

Respectfully submitted,

**NISSAN NORTH AMERICA, INC.,**

By Its Attorneys,
**JONES, WALKER, WAECHTER, POITEVENT, CARRÈRE & DENÈGRE, L.L.P.**

By:  /s/ *H. Mitchell Cowan*
      H. MITCHELL COWAN

24

Samuel Jones (MSB No. 102600)
Senior Counsel
NISSAN NORTH AMERICA, INC.
One Nissan Way
P.O. Box 685001
Franklin, TN 37068-5001
Phone: 615-725-0752
Right Fax: 615-967-3849

H. Mitchell Cowan (MSB No. 7734)
Kaytie M. Pickett (MSB No. 103202)
JONES, WALKER, WAECHTER, POITEVENT,
CARRÈRE & DENÈGRE, L.L.P.
190 East Capitol Street
Suite 800 (39201)
Post Office Box 427
Jackson, MS 39205-0427
Telephone: (601) 949-4900
Facsimile: (601) 949-4804
mcowan@joneswalker.com
kpickett@joneswalker.com

25

## CERTIFICATE OF SERVICE

I, hereby certify that I electronically filed the foregoing with the Clerk of the Court using

the ECF system which sent notification of such filing to the following:

Barbra Martin Blackmon, Esq.
Edward E. Blackmon, Esq.
Janessa Blackmon, Esq.
BLACKMON & BLACKMON, PLLC
907 West Peace Street
P.O. Drawer 105
Canton, Mississippi 39046

Harold E. Pizzetta, III
Justin L. Matheny
Office of the Attorney General
P.O. Box 220
Jackson, MS 39205

This, the 20th day of February, 2012.

/s/ H. Mitchell Cowan
H. MITCHELL COWAN

4176508.1/10826.37353