IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**CITY OF CANTON, by and through its**
**Mayor, William Truly, Jr., Alderwoman Alice Scott,**
**Aldermen, Rodriquez Brown, Billy Myers,**
**Charles Weems, Louis Smith, Reuben Myers**
**and Eric Gilkey**                                                                            **PLAINTIFFS**

**VS.**                                      **CIVIL ACTION NO. 3:11cv318-CWR-LRA**

**NISSAN OF NORTH AMERICA, INC.**                               **DEFENDANT**

**and**

**JIM HOOD, ATTORNEY GENERAL FOR THE**
**STATE OF MISSISSIPPI,** *EX REL.* **THE STATE**
**OF MISSISSIPPI**                                                   **INTERVENOR-DEFENDANT**

---

**MEMORANDUM OF AUTHORITIES SUPPORTING THE**
**STATE OF MISSISSIPPI'S MOTION FOR SUMMARY JUDGMENT**

---

### I. Introduction.

The Mississippi Legislature has the express right to create, modify, and/or revoke the authority it grants to municipalities and any other political subdivisions of the State. The Legislature also has the authority to further the express public policy of promoting economic growth and thereby creating jobs for Mississippians.

In November 2000, the Legislature passed House Bill No. 1, 2000 Extraordinary Session, and the Governor signed the bill into law. House Bill No. 1 amended the Mississippi Major Economic Impact Act and provided certain tax and other incentives to large business projects locating in the state. Specifically, the legislation modified statewide municipal authority by providing that any municipality may enter into an agreement not-to-annex project properties for a

period of thirty years.

Plaintiff City of Canton subsequently made an agreement not to annex the Nissan project in Madison County, Mississippi, consistent with House Bill No. 1.  In May 2011, Canton filed this lawsuit seeking to undo its agreement not-to-annex.  Canton's complaint seeks a declaratory judgment that House Bill No. 1 is unconstitutional, and its agreement should be voided, based on purely legal theories.  None of them have merit.

House Bill No. 1 does not violate the Fourteenth Amendment of the federal and Mississippi Constitutions because Canton has no due process or equal protection rights.  House Bill No. 1 also does not violate Mississippi Constitution's prohibitions on certain local and private laws.  The bill is a general law governing matters of statewide import.  Furthermore, none of Canton's contractual arguments have any merit.  Canton's agreement is valid and binding, consistent with public policy, and supported by consideration.

A final judgment on all these legal issues should be entered in favor of the State and Nissan.  All of Canton's claims should be dismissed for the reasons that follow.[1]

## II. Undisputed Material Facts.

The City of Canton, Mississippi and its elected mayor and alderpersons filed their Amended Complaint in May 2011.  [Amended Complaint at ¶¶ 1-9, Ex. "A" to Notice of Removal, Docket No. 1].  Canton is a municipal corporation and political subdivision of the

---

[1] The State also agrees with Nissans' essentially identical arguments for dismissal set forth in its recently filed Motion for Judgment on the Pleadings.  [*See* Docket Nos. 25 & 26].  This lawsuit should be entirely dismissed with prejudice whether by way of Nissan's Judgment on the Pleadings and/or the State's Motion for Summary Judgment.

State of Mississippi.² The mayor and alderpersons have filed suit in their official capacities as the duly elected officials of Canton.³

On November 6, 2000, the Mississippi Legislature adopted House Bill Number No. 1 in the Third Extraordinary Session of 2000. House Bill No. 1 was signed by the Governor and thereafter incorporated into various sections of the Mississippi Code. Specifically, House Bill No. 1 enhanced the authority of the Mississippi Development Authority in an effort to promote economic development through laws pertaining to Mississippi development "projects." The term "project" was defined, in pertinent part, as follows:

> 1. Any major capital project with an initial capital investment from private sources of not less than Seven Hundred Fifty Million Dollars ($750,000,000.00) which will create at least three thousand (3,000) jobs meeting criteria established by the Mississippi Development Authority.
>
> 2. "Project" shall also include any ancillary development or business resulting from an enterprise operating a project as defined in item 1 of this paragraph (f)(iv), of which the authority is notified, within three (3) years from the date that the enterprise entered into commercial production, that the state has been selected as the site for the ancillary development or business.

MISS. CODE ANN. § 57-75-5(f)(iv) (Rev. 2011).⁴ The Nissan property in Madison County, Mississippi meets the definition of "project" in Section 57-75-5(iv).

The relevant parts of Section 18(2) of House Bill No. 1 challenged here include laws

---

² *See* MISS. CODE ANN. § 21-17-1 *et seq. See also Kazery v. City of Jackson, Miss.*, 998 F.Supp. 705, 706 (S.D. Miss. 1998); *Starnes v. City of Vardaman*, 580 So. 2d 733, 736 (Miss. 1991).

³ When government officials litigate in their official capacity, the government entity they represent is in effect the real party in interest. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Brown v. City of Hazlehurst*, 741 So. 2d 975, 982 (Miss. Ct. App. 1999).

⁴ Laws enacted by House Bill No. 1 have been subject to modifications and several re-enactments since 2001. Most recently, the definitions contained in Section 57-75-5 were re-enacted by the Legislature during the 2011 regular session as set forth in S.B. 2238, Regular Session 2011, and signed into law by the Governor on or about March 30, 2011.

relating to boundary changes affecting projects that have been codified as follows:

> [t]he governing authorities of a municipality may enter into an agreement with an enterprise operating a project as defined in Section 57-75-5(f)(iv)1 or Section 57-75-5(f)(xxi) providing that the municipality shall not change its boundaries so as to include within the limits of such municipality the project site of such a project unless consent thereto shall be obtained in writing from the enterprise operating the project.  Such agreement may be for a period not to exceed thirty (30) years.  Such agreement shall be binding on future governing authorities of such municipality.

MISS. CODE ANN. § 21-1-59(2) (Rev. 2007).

On November 6, 2000, Canton made an agreement (as shown by city resolutions and a letter agreement between Canton and the Mississippi Development Authority) not-to-annex the land where the Nissan project was located for a period of thirty years.  [*See* Exs. "A" & "B" affixed to Amended Complaint, Ex. "A" to Notice of Removal, Docket No. 1].  Canton subsequently entered into a related "Agreement to Make Payments in Lieu of Ad Valorem Taxes" with Nissan, Mississippi Development Authority, Madison County, and the Madison County Tax Collector on April 23, 2003.  [*See* Exhibit "B" to Nissan's Motion for Judgment on the Pleadings, Docket No. 25].  Following completion of construction, Nissan began operations at the project site.  To this day, continues to operate the plant located there.

On or about May 10, 2011, Canton filed its First Amended Complaint in Madison County Circuit Court.  On or about May 26, 2011, Nissan removed the case to this Court based on federal question and diversity jurisdiction.  [Notice of Removal, Docket No. 1].[5]

Canton's First Amended Complaint seeks declaratory relief voiding its agreement not-to-

---

[5] Following removal, the Attorney General intervened in the case on behalf of the State of Mississippi because the amended complaint raises questions regarding Canton's agreement not-to-annex involving MDA, as well as the constitutionality, construction, and application of Mississippi statutes and laws as discussed below.  [*See* June 20, 2011 Order, Docket No. 6].

annex and finding the relevant portions of House Bill No. 1 unconstitutional. To achieve that result, the First Amended Complaint utilizes three categories of legal theories. First, Canton complains that the laws enacted by House Bill No. 1 violate its due process rights under the Mississippi Constitution and the equal protection and due process rights of the Fourteenth Amendment of the United States Constitution. [First Amended Complaint at pp. 6-7 (subsections (c) and (h)), Ex. "A" to Notice of Removal, Docket No. 1]. Second, Canton alleges that House Bill No. 1 was local and private legislation that violated Sections 87 and 90(h) of the Mississippi Constitution. [*Id.* at p. 7 (subsections (e), (f) and (g))]. Third, Canton asserts various contract-based reasons to invalidate its agreement not-to-annex the Nissan property. The city alleges the agreement not-to-annex was: an ultra vires act, lacked consideration, unconscionable, and/or contrary to public policy. [*Id.* at pp. 6-8 (subsections (a), (b), (d), (i), (j), (k), (l) and (m))].

### III.  Legal Argument.

Summary judgment should be entered when there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The device is particularly appropriate "where the relevant facts are not in dispute and the critical questions turn purely on legal rights and relationships." *Canal Ins. Co. v. Owens*, 2011 WL 4833045, at *2 (S.D. Miss. Oct. 12, 2011).

This lawsuit fits neatly within that category of cases. There are no genuinely disputed material facts. The Court only must decide pure legal questions regarding House Bill No. 1 and Canton's agreement not-to-annex the Nissan project property. As explained below, none of Canton's constitutional, state law, or other arguments has merit. Summary judgment should be entered against Canton and its case should be dismissed with prejudice.

A.     **Canton Cannot Attack House Bill No. 1 on Fourteenth Amendment Grounds.**

Municipal corporations and other political subdivisions cannot assert Fourteenth Amendment challenges to laws enacted by their creator. As long ago recognized by the United States Supreme Court, "[a] municipal corporation, created by a state for the better ordering of government, has no privileges or immunities under the Federal Constitution which it may invoke in opposition to the will of its creator." *Williams v. Mayor and City Council of Baltimore*, 289 U.S. 36, 30 (1933). The Fifth Circuit Court of Appeals has repeatedly held that a state's political subdivisions cannot challenge the state's duly enacted laws under the Fourteenth Amendment. *Donelson v. Louisiana Division of Administrative Law*, 522 F.3d 564, 566-67 (5th Cir. 2008); *Appling County v. Municipal Electric Authority of Georgia*, 621 F.2d 1301, 1307-08 (5th Cir. 1980); *City of Safety Harbor v. Birchfield*, 529 F.2d 1251, 1253-54 (5th Cir. 1976).[6] The Mississippi Supreme Court has also recognized that "...political subdivisions of a state have no Fifth or Fourteenth Amendment protections against the state." *State v. Hinds County Bd. of Supervisors*, 635 So. 2d 839, 843 (Miss. 1994) (citing *City of Trenton v. State of New Jersey*, 262 U.S. 182 (1923); *Board of Levee Commissioners of the Orleans Levee Board v. Huls*, 852 F.2d 140, 142-43 (5th Cir. 1988)).

This well-established rule of law is fully applicable here. Canton is a municipal corporation created by the State of Mississippi. MISS. CODE ANN. § 21-17-1 *et seq.* Its rights as a political subdivision are defined by, and completely subject to the will of, the State of

---

[6] In addition to the United States Supreme Court's opinion in *Williams*, the litany of cases cited therein, and Fifth Circuit holdings on point, other circuits have also uniformly held that political subdivisions cannot bring equal protection or due process challenges to laws passed by their respective governing bodies. *See City of Herriman v. Bell*; 590 F.3d 1176, 1183 (10th Cir. 2010); *United States v. Alabama*, 791 F.2d 1450, 1455 (11th Cir. 1986); *Delta Special School Dist. No. 5 v. State Bd. of Education*, 745 F.2d 532, 533 (8th Cir. 1984); *City of New York v. Richardson*, 473 F.2d 923, 929 (2nd Cir. 1973), *cert. denied*, 412 U.S. 950.

Mississippi. Those rights do not include any Fourteenth Amendment right to litigate the validity of state laws.[7]

Additionally, should Canton contend that naming its current mayor and alderpersons as plaintiffs in this lawsuit somehow validate its Fourteenth Amendment claims, that makes no difference. A government official litigating in his or her official capacity has no different status than the governmental entity he or she represents. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Brown v. City of Hazlehurst*, 741 So. 2d 975, 982 (Miss. Ct. App. 1999). As the Fifth Circuit has held, elected officials suing in their official capacities do not have any more right to assert constitutional claims on behalf of a political subdivision than the political subdivision itself. *See Donelson*, 522 F.3d at 566 (holding commissioner of insurance lacked standing to assert constitutional claim and recognizing "...state officials lack standing to challenge the constitutional validity of a state statute when they are not adversely affected by the statute, and their interest in the litigation is official, rather than personal."). Neither the city, nor its mayor and alderpersons, have any right to assert a Fourteenth Amendment challenge to House Bill No. 1.

In summary, courts have universally held that political subdivisions cannot assert Fourteenth Amendment rights against laws enacted by their creators. Canton simply does not have any Fourteenth Amendment rights to challenge House Bill No. 1. Its federal and state Fourteenth Amendment claims should therefore be dismissed.

---

[7] Canton cannot challenge House Bill No. 1 on Fourteenth Amendment grounds regardless of whether its claims are based on federal or state due process and equal protection rights. The Mississippi Constitution does not afford litigants any greater Fourteenth Amendment protections than the United States Constitution. *See, e.g., Miss. Power Co. v. Goudy*, 459 So. 2d 257, 261 (Miss. 1984) (recognizing that Fourteenth Amendment protections under the federal and Mississippi Constitutions are the same).

**B.     House Bill No. 1 is "General" Legislation that Does Not Violate Mississippi Constitution Sections 87 and/or 90(h).**

House Bill No. 1 was a general law the day it was enacted, and has been codified as a general law ever since then. The Legislature does not violate Mississippi Constitution Sections 87 or 90(h) when it suspends a general law by enacting a general law. *City of Jackson v. Deposit Guar. Bank & Trust Co.*, 160 Miss. 752, 765-66, 133 So. 195 (1931). Section 87 provides that

> [n]o special or local law shall be enacted for the benefit of individuals or corporations, in cases which can be provided for by general law, or where the relief sought can be given by any court of this State; nor shall the operation of any general law be suspended by the Legislature for the benefit of any individual or private corporation or association, and in all cases where a general law can be made applicable, and would be advantageous, no special law shall be enacted.

MISS. CONST., art 4., § 87. Section 90(h) provides that "[t]he Legislature shall not pass local, private, or special laws in any of the following enumerated cases, but such matters shall be provided for by general laws, viz.: . . . (h) Exemption of property from taxation or from levy or sale." MISS. CONST., art. 4, § 90(h). Both sections specifically prohibit the Legislature from passing a local or private law that suspends tax laws for corporations or exempts corporate property from taxation. In so providing, however, both sections recognize the Legislature's authority to implement a suspension or exemption with a general law. *City of Jackson*, 160 Miss. at 765.

Canton claims that House Bill No. 1 was a "local or private" law – not a general law – that violates both sections 87 and 90(h). [Amended Complaint at p. 7 (subsections (e), (f) and (g)), Ex. "A" to Notice of Removal, Docket No. 1]. Canton is wrong because House Bill No. 1 clearly meets the well-established criteria for a general law.

A law is "general" with respect to Sections 87 and 90(h) "'when it applies to and operates

uniformly on all members of any class of persons, places, or things requiring legislation peculiar to the particular class dealt with by the law.'" *City of Jackson*, 160 Miss. at 766 (quoting *State v. Gilmer Grocery Co.*, 156 Miss. 99, 125 So. 710, 717 (1930); *State v. Speakes*, 144 Miss. 125, 109 So. 129 (1926); *Toombs v. Sharkey*, 140 Miss. 676, 106 So. 273 (1925)).  By contrast, for a law to be "local and private," it must be "'[c]lass legislation . . . [that] is legislation limited in operation to certain persons or classes of persons, natural or artificial, or to certain districts of the territory of the State.'" *Secretary of State v. Wiesenburg*, 633 So. 2d 983, 994 (Miss. 1994) (quoting *Vardaman v. McBee*, 198 Miss. 251, 21 So. 2d 661 (1945)).  However, a law is not "local and private" just because it may solely impact one person or place:

> [w]here a law is broad enough to reach every portion of the state and to embrace within its provision every person or thing distinguished by characteristics sufficiently marked and important to make them clearly a class by themselves, it is not special or local, but a general, law, even though there may be but one member of the class or one place on which it operates.

*Id.* at 995 (quoting *Vardaman*, 198 Miss. at 260, 21 So. 2d at 664).

The specific provisions of House Bill No. 1 of which Canton complains (*i.e.*, the law as now codified in Sections 21-1-59(2) of the Mississippi Code) constitute general laws for at least three reasons.  First, the statutes apply uniformly.  *See id.* (finding statutes operated uniformly where does not benefit one over another).  The annexation conditions do not apply to some municipalities and not others.  Neither Canton, nor any other municipality, is singled out by operation of the statutes.  *Any municipality* may execute an agreement not to annex a project site. MISS. CODE ANN. § 21-1-59(2).

Second, the laws enacted through House Bill No. 1 are not solely applicable to certain geographical areas or territories of Mississippi.  House Bill No. 1 targeted the legislative goal of

statewide economic development.  *See Wiesenburg*, 633 So. 2d at 995 (explaining focus of inquiry is whether law attacks statewide problem rather than limited geographical concerns).  The location where a "project" can be established is not limited.  Anywhere a "project" is located, the statutory provisions will apply.

Third, speculation that only a limited number of "projects" or municipalities may ever be affected by House Bill No. 1 is irrelevant to a general law analysis.  The laws apply to the entire class of municipalities in Mississippi and do not distinguish between any one or another.  *See id.* (finding laws affecting all members of the class of persons whose land border tidelands was not invalid local and private legislation); *Burrell v. Miss. State Tax Comm'n*, 536 So. 2d 848, 862 (Miss. 1988) (explaining test for general law is "whether every person that can be brought within its predicament becomes subject to its operation," not the number of members of a class which it currently operates); *contra Oxford Asset Partners, LLC v. City of Oxford*, 970 So. 116, 121-25 (Miss. 2007) (holding local and private law that expressly applied *solely* to the City of Oxford and could not operate as to any other municipality in the future violated Section 87 of the Constitution).

For all three of these reasons, House Bill No. 1 is a general law, not a local and private law.  It is not subject to Sections 87 or 90(h) of the Mississippi Constitution.  Canton's "local and private" Mississippi constitutional challenges to House Bill No. 1 should therefore be dismissed.[8]

---

[8] Canton's Amended Complaint also references a claim pursuant Section 96 of the Mississippi Constitution.  [Amended Complaint at p. 8, subsection (m), Ex. "A" to Notice of Removal, Docket No. 1].  That constitutional section has no application here because House Bill No. 1 does not "grant extra compensation, fee, or allowance to any public officer, agent, servant or contractor, after service rendered or contract made. . .."  MISS. CONST., art. 4, § 96.  Nissan is not a "public officer, agent, servant or contractor" and the undisputed facts of this case otherwise do not implicate any provisions of Section 96.

### C. Canton is Bound by its Agreement Not-to-Annex.

Canton's last set of claims includes several theories under which its November 2000 agreement not-to-annex is contractually unenforceable against the city or its current city officials. [Amended Complaint at pp. 6-8 (subsections (a), (b), (d), (i), (j), (k), (l) and (m)), Ex. "A" to Notice of Removal, Docket No. 1]. None of Canton's contract theories has legal merit. They should be dismissed, just like its constitutional claims.

#### 1. The Agreement Not-to-Annex was Statutorily Authorized.

All of Canton's "non-binding municipal authority" arguments are off-base. Canton is bound by the agreement not-to-annex even though the decision to make it was a discretionary function of the city leaders at that time. Generally, when a municipality authority's act is discretionary, "one city administration cannot bind succeeding city administrations." *In re Municipal Boundaries of City of Southaven*, 864 So. 2d 912, 917 (Miss. 2003) (citing *Biloxi Firefighers Assoc. v. City of Biloxi*, 812 So. 2d 589, 593 (Miss. 2002)). However, that rule does not apply where a "statute conferring power to contract clearly authorizes the [municipal authority] to make a contract extending beyond its own terms. . .." *City of Southaven*, 864 So. 2d at 917 & n.2 (quoting 56 AM. JUR. 2D *Municipal Corporations* § 154 at 206 (1971)). *See also Quinn v. City of McComb*, 55 So. 2d 479, 482 (Miss. 1951) (holding municipality had authority conferred by general laws to enter into cooperation agreement abandoning right to fix taxes on property for sixty years); Eugene McQuillin, 10A THE LAW OF MUNICIPAL CORPORATIONS § 29:102 (3d ed.) (collecting authorities and recognizing "[s]tatutes and charters sometimes authorize municipal boards to make contracts which will extend beyond their own official term, and the power of the legislature in this respect is well-settled").

House Bill No. 1 specifically granted Canton (and all other Mississippi municipalities) the power to contract beyond the terms of its elected officials. *See* MISS. CODE ANN. § 21-1-59(2) (Rev. 2007) (providing that contracts not to annex under its provisions "shall be binding on future governing authorities of such municipality"). All of Canton's various "non-binding municipal authority" arguments regarding the agreement not-to-annex (*i.e.*, the agreement was ultra vires, or the agreement otherwise cannot be enforced beyond the terms of office of the 2000 board) thus have no merit. [*See* Amended Complaint at pp. 6-8 (subsections (a), (b), (d), (i), and (j)), Ex. "A" to Notice of Removal, Docket No. 1].

### 2. The Agreement Not-to-Annex is Consistent with Public Policy.

Canton is also wrong in claiming that its agreement not-to-annex is void as contrary to public policy. [*See id.* at p. 8 (subsections (k) and (l))]. It is well-established that a contract contravenes public policy only if contrary to the constitution, state statutes, or court decisions. *State v. Edward Hines Lumber Co.*, 115 So. 598, 605 (Miss. 1928). The public policy reasons to overturn a contract must be unmistakable because courts are supposed "to enforce contracts rather than enable parties to escape their obligation upon the pretext of public policy." *Smith v. Simon*, 224 So. 2d 565, 566 (Miss. 1969).

Canton's agreement not-to-annex is not contrary to public policy. The agreement is consistent with public policy. Mississippi's public policy was expressed in the legislation amended by House Bill No. 1 and stated in plain terms. The Legislature enacted House Bill No. 1 as an amendment to the Mississippi Major Economic Impact Act. *See* MISS. CODE ANN. § 57-75-1 *et seq*. The recognized purpose of the Act specified that "[t]here exists in the State of Mississippi a continuing need for gainful employment for the citizens of this state." MISS. CODE

ANN. § 57-75-3(a) (Rev. 2003).[9]  The Act further intended to for the Development Authority to secure "the location of major economic impact projects" in the state "by providing assistance and incentives in connection with such projects," and to be acting "for the benefit of the people of the state in the performance of essential public functions" in furtherance of the public interest in improving and promoting the public "health, welfare and prosperity."  MISS. CODE ANN. § 57-75-3(b) & (c) (Rev. 2003).  Canton's November 6, 2000 agreement was, and continues to be, consistent with this public policy.

   3.  **The Agreement Not-to-Annex was Supported by Consideration.**

  Finally, the agreement not-to-annex is not void for lack of consideration.  [*See* Amended Complaint at p. 8 (subsection (m)), Ex. "A" to Notice of Removal, Docket No. 1].  In Mississippi, "[a]ll that is needed to constitute a valid consideration to support an agreement or contract is that there must be either a benefit to the promissor or a detriment to the promisee.  If either of these requirements exist, there is a sufficient consideration." *Theobald v. Nosser*, 752 So. 2d 1036, 1040 (Miss. 1999).  *See also Lowndes Co-op Ass'n (AAL) v. Lipsey*, 126 So. 2d 276, 278 (Miss. 1961).  Canton obviously benefitted from the agreement not-to-annex.  For example, the city acquired a new fire service facility as part of the agreement.  [*See* Amended Complaint at Ex. "B"].  The agreement not-to-annex thus cannot be void for lack of consideration.

---

[9] The Mississippi Major Economic Impact Act was first enacted in 1989 with its original statements of public policy and codified in Section 57-75-3 of the Mississippi Code.  *See* Laws, 1989, ch. 534, § 2.  Those statements of public policy were in place when House Bill No. 1, 2000 Third Extraordinary Session amended the Act.  Section 57-75-3 were subsequently amended in 2003.  *See* Laws, 2003, ch. 326, § 1.  The 2003 amendments (which comprise the current version of the Section) did not change the substance of the policy statements contained in the original enactment.  Those subsequent amendments simply added language creating the Mississippi Major Economic Impact Authority in place of the Mississippi Development Authority (as a division within MDA) with certain authority and responsibility under the Act.

In summary, Canton's agreement not-to-annex was authorized by law, binding upon the city, and satisfied all legal requisites. All of Canton's contractual claims should therefore be dismissed.

### IV.  Conclusion.

Plaintiffs have no right to challenge the constitutionality of House Bill No. 1 under the Fourteenth Amendment. House Bill No. 1 is a general law that does not violate the local and private law proscriptions of the Mississippi Constitution. Furthermore, Canton's agreement not-to-annex – made pursuant to the laws enacted by House Bill No. 1 – is valid and binding. For all the reasons set forth above, the Court should enter summary judgment and dismiss this action with prejudice.

THIS the 22nd day of February, 2012.

                Respectfully submitted,

                JIM HOOD, ATTORNEY GENERAL OF
                THE STATE OF MISSISSIPPI, *EX REL.*
                THE STATE OF MISSISSIPPI


       By: S/Justin L. Matheny
          Harold E. Pizzetta, III (Bar No. 99867)
          *hpizz@ago.state.ms.us*
          Justin L. Matheny (Bar No. 100754)
          *jmath@ago.state.ms.us*

Office of the Attorney General
P.O. Box 220
Jackson, MS 39205
Telephone: (601) 359-3680
Facsimile: (601) 359-2003

## CERTIFICATE OF SERVICE

 I hereby certify that the foregoing document has been filed electronically with the Clerk of Court and thereby served on all counsel of record who have appeared in this action.

 THIS the 22nd day of February, 2012.

S/Justin L. Matheny
Justin L. Matheny
