IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**CITY OF CANTON, Mayor William Truly, Jr.,
Alderwoman Alice Scott, Aldermen Rodriguez Brown,
Billy Myers, Charles Weems, Louis Smith,
Reuben Myers and Eric Gilkey**                                            **PLAINTIFFS**

**VS.**                                        **CIVIL ACTION NO.: 3:11-CV-00318-CWR-LRA**

**NISSAN NORTH AMERICA, INC.**                                              **DEFENDANT**

And

**JIM HOOD, ATTORNEY GENERAL FOR
THE STATE OF MISSISSIPPI, EX REL.
THE STATE OF MISSISSIPPI**                                                            **INTERVENOR**

**PLAINTIFFS' MEMORANDUM OF AUTHORITIES IN SUPPORT
OF THEIR OPPOSITION TO THE STATE OF MISSISSIPPI'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiffs, City of Canton; William Truly in his official capacity as Mayor; Alice Scott, in her official capacity as Alderwoman at large; Rodriquez Brown, in his official capacity as Alderman of Ward 1; Billy Myers, in his official capacity as Alderman of Ward 2; Charles Weems, in his official capacity as Alderman of Ward 3; Louis Smith, in his official capacity as Alderman of Ward 4; Reuben Myers, in his official capacity as Alderman of Ward 5; and Eric Gilkey, in his official capacity as Alderman of Ward 6, submits this Memorandum of Authorities in support of their response in opposition to Defendant's Motion for Summary Judgment on the under Rule 56 of the Federal Rules of Civil procedure. In support thereof, would show the following, to wit:

    I.     Introduction

Constitutional violations cannot be deterged through Legislative action, whatever its

motivation. During a specially-called 2000 Legislative Session, the Mississippi legislature ushered in a Bill which would have a dramatic effect on Mississippi's long standing history of public policy that a municipality may not bind their successors in office, taking away from them rights and responsibilities conferred by law. *Humble Oil and Refining v. State,* 41 So. 2d 765 (Miss. 1949); *Smith v. Mitchell,* 1 So. 2d 765 (Miss. 1941); *American Oil Co. v. Marion County,* 192 So. 296 (Miss. 1939); *Edwards Hotel & City St. R. Co. v. City of Jackson,* 51 So. 802 (Miss. 1910). The Mississippi Legislature on November 6, 2000, adopted House Bill Number 1 in its Third Extraordinary Session, 2000 (the "Act"). The Act, specifically under Section 18(2), made substantive changes to Miss. Code Ann §21-1-59, which granted a sitting Mayor and Board of Aldermen the authority to enter into an agreement creating a moratorium on the municipalities ability to enlarge its boundaries through annexation. This contractual moratorium would then be binding to their municipality's successors. Further, in its amendment to Miss. Code Ann §21-1-59, the Act delegates to an industrial entity, that has an adverse, personal, pecuniary interest in the decision, the power to consent or oppose an annexation of its property during the period in which the contract is in effect. Pursuant to Section 18(2) of the Act, a municipality is authorized to agree that said municipality will not change its boundaries for a period of up to thirty (30) years so as to include within the limits of such municipality the site of a project, as defined in Sections 57-75-5(f) and 57-75-5(g) of the Mississippi Code of 1972, as amended (a "Project"), unless consent thereto shall be obtained in writing from the enterprise operating the Project. See Ex. "A", First Amended Complaint at §14.

In this action, Plaintiffs, challenge the constitutionality of the Mississippi Legislature House Bill Number 1, Third Extraordinary Session, 2000("the Act"), which, in pertinent part, authorized the City of Canton to enter an agreement with Nissan North America; Inc., and bind its successors to said agreement. See Ex. "B", House Bill 1. Further, Plaintiff's challenge the validity of the agreement made between the City of Canton and Nissan, whereby the city

2

administration agreed not to annex a certain parcel of land for a period of thirty years.

## **LEGAL STANDARD(S)**

It goes without deliberation that a motion for summary judgment is a powerful tool in a Defendant's arsenal, for it disposes of the Plaintiff's case without affording the opportunity of a trial, dispensing with an examination and analysis by the trier of fact.  Nonetheless, there are fairly clear guidelines as to when the granting of the motion is proper:

> A trial court *may* grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is *no* genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  M.R.C.P. 56(c).

It is a well-known premise that summary judgment is appropriate when, considering all of the facts in the pleadings, depositions, admissions, answers to interrogatories, and affidavits, and drawing all inferences in the light most favorable to the *nonmoving* party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Newel v. Oxford Management, Inc.,* 912 F.2d 793, 795 (5th Cir.1990).  There is no genuine issue of fact if taking the record as a whole a rational trier of fact could not find for the nonmoving party. *Id.*

When confronted with these motions, this Court focuses on "genuine" issues of "material" facts. *Gaddis v. Hegler*, 2011 WL 2111801.  An issue is genuine "if the evidence supporting its resolution in favor of the party opposing summary judgment, together with an inference in such party's favor that the evidence allows would be sufficient to support a verdict in favor of the party." *Zisman v. Mason,* 2008 WL 879726, at *3 (S.D.Miss.2008) (citing *Amant v. Benoit,* 806 F.2d 1294, 1297 (5th Cir.1987).  A fact is material if it is one which might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986). Factual disputes that are irrelevant or unnecessary will not be considered. *Id.*

Furthermore, unsubstantiated assertions are not competent summary judgment evidence. *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir.1994).

In this action, Plaintiffs, challenge the constitutionality of the Mississippi Legislature House Bill Number 1, Third Extraordinary Session, 2000("the Act"), which, in pertinent part, authorized the City of Canton to enter an agreement with Nissan North America; Inc.; whereby the city administration agreed not to annex a certain parcel of land for a period of thirty years. Pursuant to Section 18(2) of the Act, a municipality is authorized to agree that said municipality will not change its boundaries for a period of up to thirty (30) years so as to include within the limits of such municipality the site of a project, as defined in Sections 57-75-5(f) and 57-75-5(g) of the Mississippi Code of 1972, as amended (a "Project"), unless consent thereto shall be obtained in writing from the enterprise operating the Project.

The Defendant in this case seeks dismissal of the Plaintiffs' case based on the argument that Plaintiffs voluntarily agreed to enter into the agreement with Nissan based on negotiations between the two parties.  However, this, in fact was not the case.  The City of Canton was informed that negotiations had been done on their behalf for the preceding "several months" prior to the City of Canton being approached with this agreement.  House Bill 1was signed and approved by the Governor on November 11, 2000, exactly the same day the letter stating that the State of Mississippi had been negotiating with "a major industrial client regarding the possible location of a large manufacturing plant in Mississippi had been drafted.  Ironically, the incentives that apparently had been negotiated were those same incentives addressed in House Bill 1, signed and approved by the Governor on the same day the letter was written to the Mayor of the City of Canton. See Ex. "C", Letter to Mayor Scott from James C. Burns, dated November 6, 2000.

This letter spelled out the exact terms the Mississippi Development Authority acting on behalf of the State of Mississippi had negotiated on behalf of the City of Canton and most importantly strongly urged the City to support via the passing of a Resolution spelling out those exact terms.  See Ex. "D", Resolution.  Merely, one day after the date of that letter, the City of Canton passed a Resolution supporting every itemized request in the letter.  There was not one change or concern.  Arguably the City had no time to, wherein the Defendant had months, to research this agreement in an effort to determine how beneficial these requests would be for the City in the years to come.  The agreement, in which the State of Mississippi encouraged the City of Canton to enter, was an unconscionable contract.  Wherein the Defendant wishes to assert that the City entered into this agreement on its own, the timing of the events that transpired would show that all of the negotiations had taken place during several months preceding the City even being approached with a laundry lists of requests which they were asked to concede.

### A. MISSISSIPPI CODE SECTION 21-1-59 VIOLATES THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION

The Fourteenth Amendment of the United States Constitution states: No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the law."  U.S. Constitution Amend. XIV, Section 1.  A Fourteenth Amendment violation occurs when the government treats one group differently from another in the pursuit of some social goal.  In the present case, then Mayor Alice Scott was told by deceased City Attorney, Bill Collins, now deceased, that the City of Canton would never be able to annex Nissan.  After hearing of this, Former Mayor Alice Scott, Former Alderman-at-Large William Truly, Jr. and former Alderman Kenneth Wayne Jones met with J. C. Burns and Jay Moon of the Mississippi Development

5

Authority to discuss the City of Canton being able to annex Nissan. The City of Canton and its citizens were treated differently than any other municipality in the State of Mississippi. The City of Canton was deprived of its right to annex a facility in its path of growth when no other City in the State of Mississippi has been required to give up such a right.

As a result of the unconscionable agreement, the City of Canton provides City services through the use of its roads, police protection and fire protection, to the area in question, but yet receives no compensation for foregoing a right to annex an area within its path of growth. The City of Canton and its citizens were denied their right to equal protection based on the fact that, to its knowledge, no other City has been asked to agree to forego this right. The City of Canton and its citizens have been denied equal benefits of laws of the State of Mississippi which gives municipalities the right to annex areas. The City of Canton had a protectable property interest which the State of Mississippi deprived the municipality of that interest without procedural due process of law. The State of Mississippi took the property interest of the City of Canton for its own use; thereby depriving the City of Canton of its proprietary property interest. The subject contract was unconscionable, against public policy, violated the State of Mississippi's Constitutional Probation against the giving of public property without just compensation, and is void for lack of consideration.

  **B.** **HOUSE BILL 1 WHILE ON ITS FACE APPEARS TO BE GENERAL LEGISLATION IS A BILL SPECIFICALLY DESIGNED FOR THE PURPOSE OF SOLIDIFYING AN AGREEMENT WHICH BEGAN MONTHS PRIOR TO THE BILL BEING PASSED**

The Defendant has asked this Court to believe that House Bill 1 was not drafted with the specific intent of fully executing the terms of an agreement stemming from negotiations which began months prior to the Bill being passed. According to the letter sent by the Mississippi Development Authority, dated the same day in which the Bill passed, the State of Mississippi had been negotiating with the Defendant for several

6

months prior to the date of the November 11, 2000 letter. The letter specifically requests that the City of Canton comply with and offer the incentive package specified in House Bill 1. While the Defendant has argued that this Bill was not designed to be a local law, ironically the requests from the Mississippi Development Authority, to the City of Canton occurred on the same day the Bill was passed. Further, the Defendant, given the awesome task of showing there are no genuine issues of fact, has not provided proof of any other entity/municipality that has used House Bill 1 has an incentive in bringing business to the State of Mississippi. Thus, it is evident that this Bill was designed for the specific purpose of furthering the negotiations that had occurred in an effort to bring the Defendant to the State of Mississippi and in doing so enabling the City of Canton's ability to annex for some 30 years.

### C. THE CITY OF CANTON SHOULD NOT BE BOUND BY ITS AGREEMENT TO ANNEX BECAUSE THE AGREEMENT LACK CONSIDERATION AND WAS UNCONSCIONALBE THEREBY MAKING SAID AGREEMENT UNENFORCEABLE

The Court recognizes two types of contractual unconscionability: procedural and substantive. *East Ford, Inc. v. Taylor,* 826 So.2d 709, 714 (Miss.2002), citing *Pridgen v. Green Tree Fin. Servicing Corp.,* 88 F.Supp.2d 655 (S.D.Miss.2000) (other citations omitted). In discussing the distinguishing features of the two, the *East Ford* Court stated:

> Procedural unconscionability may be proved by showing "a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms". 826 So.2d at 714.

This Court went on to say that "substantive unconscionability may be proven by showing the terms of the arbitration agreement to be oppressive." *Id. See also Russell v. Performance Toyota, Inc.,* 826 So.2d 719, 725 (Miss.2002) ("Substantive unconscionability may be found when the terms of the contract are of such an oppressive character as to be unconscionable."). Further, "unconscionability has been defined as "an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to the other party." Pitts v. Watkins, 905 So.2d 553 (Miss. April 2005).

Again the irony behind the events that took place on November 11, 2000 is quite unbelievable. House Bill 1, described as a bill to "provide incentives for certain projects developed under the Mississippi Major Economic Impact Act, was signed and approved by the Governor on November 11, 2000. On exactly the same day a letter was drafted and mailed to Alice M. Scott, who was the Mayor for the City of Canton at that time. The letter stated that the State of Mississippi had been negotiating with "a major industrial client regarding the possible location of a large manufacturing plant in Mississippi," specifically citing "Madison County near the City of Canton" as the area of interest. The letter then goes on to state that Ms. Scott had expressed "frustration regarding her personal knowledge regarding the project." Further, the letter states that the State of Mississippi had been negotiating incentives to bring this "industrial client" to the State. Ironically, the incentives that apparently had been negotiated were those same incentives addressed in House Bill 1, signed and approved by the Governor on the same day the letter was written the Mayor of the City of Canton.

The Defendant argues that the City of Nissan voluntarily entered into this agreement on its own; however the Defendant does not take into consideration the strong suggestion in the letter dated November 6, 2000 from the Mississippi Development Authority, wherein they "asked the City of Canton to agree" all of the incentives in which the City agreed to just one day

after the date of the letter.  The Defendant had months, according to the Mississippi Development Authority, to research, investigate and negotiate the terms which were most beneficial to promoting its objectives, whereas the City of Canton only had a matter of hours/days.  The City of Canton as a result of its lack of time to seek the necessary expertise on the matter entered into an agreement, at the request of the Mississippi Development Authority, to waive all monetary benefits that cities generally receive, with the exception of a fee in lieu of property taxes, which would aid in assisting with the Canton Municipal School District. Meanwhile, the City of Canton would resources for the upkeep of streets, police protection and fire protection for the area where the Defendant's facility is located.  All these incentives again were negotiated, without the knowledge or input of the City of Canton; and subsequently asked to be provided.

### THE MS LEGISLATURE'S FAILURE TO OBTAIN PRECLEARANCE AS REQUIRED BY SECTION 5 SHOULD RENDER THE CHANGES TO MISS. CODE ANNOTATED §21-1-59 LEGALLY UNENFORCEABLE.

The voting rights act was enacted in 1965 by Congress with the purpose of protecting rights of minority citizens in the United States, specifically, the Act prohibits racial or language discrimination in the voting process. *Voting Rights Act of 1965*, Pub. L. No. 89-110, 79 State 445 (codified as amended at 42 U.S.C. §§1971, 1973 to 1973bb-1 (1994)). Further the Act prohibits discriminatory measures passed by state and local governments that minimize minority citizens' right to vote. *Section 5 of the Voting Rights Act of 1965*, 79 Stat. 439, as amended, 42 U.S.C.S. § 1973, requires Mississippi, a covered jurisdiction under the Act,  to pre-clear any practice or procedure with respect to voting different from that in force or effect on November 1, 1964. Section 5 provides, in part, "whenever a State or political subdivision…shall enact or seek to administer any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect," the state or subdivision should seek

9

action from the D.C. District Court or submit a letter to the Attorney General to determine whether "such qualification, prerequisite, standard, practice, or procedure does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color. 42 U.S.C. § 1873c(a) (2006).

While annexation is frequently viewed as a property rights issue, it also shapes municipal tax-rates, urban planning, and the racial and socio-economic composition of urban areas.  As a result of the latter, municipal annexation is a government act closely monitored by the U.S. Department of Justice and federal courts under the Voting Rights Act.  State and local legislation permit municipalities to enlarge their boundaries via the annexation of parcels of outlying property.  Annexations are changes that have the potential to affect voting and are, consequently, subject to review under the Act. There is no change to the composition of the jurisdiction's electorate if annexation does not take place; however, it is possible that a failure to annex a given area may also invoke the VRA. In *City of Pleasant Grove v. United States*, 479 US. 462 (1987), the United States Supreme Court suggested that minority communities have a right to annexation.

Prior to enacting House Bill Number 1, Section 18(2), the legislature did not seek the required pre-clearance from the United States Department of Justice. "Any change affecting voting, even though it appears to be…indirect…must meet the section 5 preclearance requirement. 28 C.F.E §51.12.  Preclearance is, in effect, a determination that the change does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color. In the language of § 5 jurisprudence, this determination involves a determination that the change is not retrogressive. *Young v. Fordice*, 520 U.S. 273, 1997 U.S. LEXIS 2076 (U.S., March 31, 1997, Decided ) The only questions in an action alleging a violation of the preclearance requirement of § 5 of the Voting Rights Act of 1965, as amended,

10

42 U.S.C.S. § 1973 et seq., are (1) whether a change is covered by § 5, (2) if the change is covered, whether § 5's approval requirements have been satisfied, and (3) if the requirements have not been satisfied, what relief is appropriate. The question whether a given act had a discriminatory purpose or effect… must be initially decided by the District Court for the District of Columbia or the Attorney General. *McCain v. Lybrand*, 465 U.S. 236, 1984 U.S. LEXIS 5 (U.S., February 21, 1984, Decided )

Section 5 of the Voting Rights Act of 1964, as amended, was enacted by Congress to prevent the restoration of illegal and discriminatory barriers to voting in jurisdictions which had such laws in effect on November 1, 1964. Id. Section 5 mandates that such a "covered jurisdiction" cannot seek to enforce any change in voting, OR standard practice or procedure without receiving approval or preclearance of that change from the federal government. Id. Therefore, the legislature's failure to obtain preclearance of the voting changes described in paragraph 10 as required by Section 5 renders the changes to Miss. Code Annotated §21-1-59 legally unenforceable. 42 U.S.C. § 1973c.

## **TRADITIONAL REMEDIES ARE AVAILABLE AND WOULD PROVIDE PROCEDURAL SAFEGUARDS REQUIRED BY LAW TO ENSURE AVAILABILITY OF A PROPER REMEDY**

Allowing the Defendants to prevail on their Motion for Summary Judgment could effectively deprive the Plaintiffs of their right to present the claims enumerated in their Complaint. The relief sought involves issues which should not be dismissed based upon the claims that are now being asserted. If the motion for summary judgment was rendered in this matter, it is quite apparent that the Plaintiffs' right to a trial would be infringed upon thereby violating the policy in favor of ensuring to each litigant a full and fair hearing on the merits of his or her claim or defense. There will remain a genuine issue of material fact. In addition, great irreparable harm would be impressed upon the Plaintiffs.

11

## **CONCLUSION**

Summary judgment can be granted *only* if everything in the record demonstrates that no genuine issue of material fact exists. In the present case, material facts exist as demonstrated above.

The Intervenor-Defendant is clearly not entitled to a summary judgment on any of the issues it presses and thus said motion should be **DENIED.**

**WHEREFORE PREMISES CONSIDERED**, the Plaintiffs hereby respectfully requests that this Honorable Court **DENY** the Intervenor-Defendant's Motion for Summary Judgment and further requests any other relief this Court deems appropriate and/or necessary.

This the **16th** day of March, 2012.

                                        Respectfully submitted,

                                        **CITY OF CANTON, ET AL,** PLAINTIFFS

                              By:  /s/ Edward Blackmon, Jr. Esq.
                                    EDWARD BLACKMON, JR., MSB #3354

OF COUNSEL:

Barbara Martin Blackmon, MSB #3346
Janessa Blackmon, MSB #101544
BLACKMON & BLACKMON, PLLC
907 West Peace Street
Post Office Drawer 105
Canton, MS  39046
Telephone: (601) 859-1567
Facsimile: (601) 859-2311

## **CERTIFICATE OF SERVICE**

I, Janessa E. Blackmon, do hereby certify that on this day, I electronically filed the foregoing ***Plaintiffs' Memorandum of Authorities in Support of Their Opposition to the State of Mississippi's Motion for Summary Judgment*** with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

> H. Mitchell Cowan, Esq.
> Kaytie M. Pickett, Esq.
> JONES WALKER WAECHTER POITEVENT
> CARRERE DENEGRE, LLP
> 190 East Capitol Street
> Post Office Box 427
> Jackson, MS 39205-0427

> Harold E. Pizzetta, III, Esq.
> Justin L. Matheny, Esq.
> Office of the Attorney General
> Post Office Box 220
> Jackson, MS 39205

And I hereby certify that I have mailed by United States Postal Service the document to the following non-ECF participants:

> Samuel Jones, Esq.
> NISSAN NORTH AMERICA, INC.
> One Nissan Way
> Post Office Box 685001
> Franklin, TN 37068-5001

This the **16th** day of March, 2012.

/s/ Edward Blackmon, Jr. Esq.
EDWARD BLACKMON, JR., MSB #3354

Z:\oldFiles\CITY OF CANTON\City of Canton vs. NISSAN\Plaintiffs' Memorandum in Support of Response to Summary Judgment 3.16.12.docx