IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**CITY OF CANTON, Mayor William Truly, Jr.,
Alderwoman Alice Scott, Aldermen Rodriguez Brown,
Billy Myers, Charles Weems, Louis Smith,
Reuben Myers and Erick Gilkey**                                        **PLAINTIFFS**

**VS.**                                    **CIVIL ACTION NO.:  3:11cv00318-CWR-LRA**

**NISSAN NORTH AMERICA, INC.**                                        **DEFENDANT**

**and**

**JIM HOOD, ATTORNEY GENERAL FOR THE
STATE OF MISSISSIPPI, EX REL. THE STATE OF MISSISSIPPI**            **INTERVENOR**

**REPLY BRIEF OF NISSAN NORTH AMERICA, INC. IN SUPPORT OF
MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendant Nissan North America, Inc. ("Nissan") submits this Reply Brief in Support of its Motion for Judgment on the Pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. Through its Rule 12(c) Motion, Nissan seeks a judgment in its favor on all claims asserted against it in the First Amended Complaint for Declaratory Judgment filed in this action by Plaintiffs City of Canton, Mayor William Truly, Jr., Alderwoman Alice Scott, Aldermen Rodriguez Brown, Billy Myers, Charles Weems, Louis Smith, Reuben Myers and Erick Gilkey (collectively "Canton" or the "City of Canton").[1]

---

[1] The terms "Canton" and "City of Canton" include all named Plaintiffs in this action. The Mayor and alderpersons have filed suit in their official capacities as duly elected officials of Canton. When government officials litigate in their official capacity, the government entity they represent is in effect the real party in interest. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Brown v. City of Hazlehurst*, 741 So. 2d 975, 982 (Miss. App. 1999).

## I.  INTRODUCTION

In its Response in Opposition to Defendant Nissan North America, Inc.'s Motion for Judgment on the Pleadings, the City of Canton argued that House Bill No. 1, Third Extraordinary Session, 2000 ("the Act") violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.  Canton also argued that its agreement not to annex the Nissan plant site in Madison County, Mississippi for a period of 30 years (the "Agreement") was unenforceable based upon unconscionability and lack of consideration.  The City of Canton abandoned its claims that the Act and/or the Agreement violated Sections 87, 90(h) or 96 of the Mississippi Constitution.  In its Response to Nissan's Motion for Judgment on the Pleadings, Canton neither argued nor cited authority to support any claim based upon the Mississippi Constitution.[2]  Canton also failed to address its claim that the Agreement is contrary to public policy and, therefore, void.  Because Canton abandoned those claims, they should be dismissed with prejudice.  *See Chestang v. Alcorn State University*, 2011 WL 1884728, *8 (S.D. Miss. 2011); *Williams v. City of Booneville*, 2011 WL 2565259, *2 (N.D. Miss. 2011).

In this Reply Brief, Nissan will address the three claims – Equal Protection Clause, unconscionability and failure of consideration – discussed by Canton in its Response Brief.  Nissan also will address, even though not raised in the First Amended Complaint, Canton's claim that the Act violates the Voting Rights Act of 1964.

## II.  THE ACT DOES NOT VIOLATE THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT

Without citation to any authority, or other support, Canton argues that it has been treated differently than any other municipality in Mississippi and has been denied its right to equal

---

[2] In its Response to the State of Mississippi's Motion for Summary Judgment, Canton briefly suggested that Miss. Code Ann. § 21-1-59(2) is a local law.  Canton, however, did not cite any authority or explain how the statute was a local as opposed to general law.

protection of the law. That argument fails for the simple reason that a municipality is not a "person" within the meaning of the Fourteenth Amendment to the U.S. Constitution and is not entitled to Fourteenth Amendment protections. The City of Canton lacks standing to challenge the constitutionality of a state statute under the Fourteenth Amendment. In its Response Brief, Canton failed to address or challenge the numerous controlling authorities cited by Nissan and the Attorney General that require dismissal of the Fourteenth Amendment claim as a matter of law. *See City of Trenton v. State of New Jersey*, 262 U.S. 182, 191 (1923); *Donelson v. Louisiana Division of Administrative Law*, 522 F.3d 564, 566-67 (5th Cir. 2008); *Board of Levee Commissioners of the New Orleans Levee Board v. Huls*, 852 F.2d 140, 142-43 (5th Cir. 1988); *Appling County v. Municipal Electric Authority of Georgia*, 621 F.2d 1301, 1307-08 (5th Cir. 1980); *City of Safety Harbour v. Birchfield*, 529 F.2d 1251, 1253-54 (5th Cir. 1976); *State v. Hinds County Bd. of Sup'rs*, 635 So. 2d 839, 843 (Miss. 1994) (applying federal law).

Canton also failed to address any of the authorities that foreclose as a matter of law any challenge to the Act under Article III, Section Fourteen of the Mississippi Constitution. *See Cities of Oxford, Carthage, Louisville, Starkville and Tupelo v. Northeast Mississippi Elec. Power Ass'n*, 704 So. 2d 59, 61 (Miss. 1997); *Mississippi Power Co. v. Goudy*, 459 So. 2d 257, 275 (Miss. 1984).

Under a long line of federal and state cases, Canton's equal protection challenges to Miss. Code Ann. § 21-1-59(2) are plainly barred. Even if Canton otherwise had standing to challenge the constitutionality of the Act, however, the Act does not treat municipalities disparately. Section 21-1-59(2) <u>permits</u>, but does not require, a municipality to enter into a non-annexation agreement for a period of up to thirty years. It applies to any municipality in the State of Mississippi. To encourage economic development, any municipality may enter into such

agreement for projects with private capital investment of at least $750 million and that will create at least 3,000 new direct jobs. Any municipality in Mississippi could have, and still can take advantage of that economic development opportunity.

### III. CANTON'S NON-ANNEXATION AGREEMENT IS NOT UNCONSCIONABLE

Canton also argues that its non-annexation agreement is unconscionable. "Whether a contract or contractual provision is unconscionable is a question of law." *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 458 (5th Cir. 2005) (citing *Ting v. AT&T*, 319 F.3d 1126, 1135 (9th Cir.), *cert. denied*, 540 U.S. 811 (2003)). Under Mississippi law, unconscionability is either procedural or substantive. *Id.* (citing *West v. West*, 891 So. 2d 203, 213 (Miss. 2004)). It is not clear whether Canton claims procedural or substantive unconscionability; therefore, Nissan addresses both issues.

#### A. The Agreement is not Procedurally Unconscionable.

"Procedural unconscionability goes to the formation of the contract." *West*, 891 So. 2d at 213 (citing *East Ford, Inc. v. Taylor*, 826 So. 2d 709, 714 (Miss. 2002)). "A plaintiff may prove that an agreement is procedurally unconscionable by showing a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms." *Fryar v. Sav-Amil, LLC*, 2009 WL 4841041, *2 (N.D. Miss. 2009), *aff'd* 401 F. App'x 909 (5th Cir. 2010) (applying Mississippi law) (citing *Carson v. Higbee Co.*, 149 F. App'x 289, 293 (5th Cir. 2005); *East Ford, Inc. v. Taylor*, 826 So. 2d 709, 714 (Miss. 2002)).

Here, the plain language of Miss. Code Ann. § 21-1-59(2) empowered, but did not require, Canton to enter into a non-annexation agreement. The length, terms and conditions of any such agreement were matters for Canton to decide. Canton simply could have declined the

{JX002856.1}                                    4

proposed incentive, or agreed to non-annexation on different terms and conditions. Canton did not, as a matter of law, lack a meaningful choice on the matter.

Canton also suggests that its agreement was unconscionable because the Mississippi Development Authority ("MDA") played a role in negotiating an incentive package with Nissan. The MDA communicated and coordinated with numerous governmental officials and entities, including the City of Canton, in connection with the Nissan project. Although the MDA played a role in attracting Nissan to Mississippi, the fact remains that Canton, not the MDA, had the sole power and authority to enter into a non-annexation agreement.

Canton further suggests, without any support, that it "only had a matter of hours/days" to make its decision. The pleadings and exhibits belie that argument. On November 6, 2000, J.C. Burns, Executive Director of the MDA, wrote to Canton Mayor Alice Scott concerning the Nissan project. Mr. Burns requested the City of Canton to consider several proposed incentives to attract Nissan to Mississippi. One of those requested incentives was the non-annexation agreement at issue here. Other proposed incentives included the following: (1) a fee-in-lieu of taxes agreement that would require payments by Nissan to support the Canton Municipal School District; (2) the use of a portion of the multipurpose building in the Canton Industrial Park for a six month period for which Canton would be paid a fee; (3) an agreement by Canton to staff a fire station to be built within the City of Canton with a $1 million grant from the State of Mississippi; (4) certain zoning and ad valorem tax considerations for Nissan project suppliers; and (5) waiver of certain impact fees. Dkt. 35, Ex. C. In his November 6, 2000 letter, Mr. Burns invited discussion of each of the proposed incentives. He stated:

> "As noted, the State and Madison County are making very substantial commitments to this project. Those items we have requested from the city are fairly modest, but very important to this

> project. Your support and that of the City Aldermen would be greatly appreciated.
>
> I look forward to discussing these issues with you in the future."

*Id.* The MDA did not impose time restraints on the City of Canton. Canton was free to take as much time as needed to decide whether to agree to any of the proposed incentives. In response to the MDA's request, Canton voluntarily chose to pass two resolutions on November 7, 2000. In those resolutions, Canton agreed not to annex the Nissan plant site and approved the other proposed incentives, "upon application in the time and manner required by law." Dkt. 35, Ex. D. Significantly, negotiations over some of the incentives occurred much later. For example, Canton did not execute an Agreement to Make Payments in Lieu of Ad Valorem Taxes until April 1, 2003, almost two and one-half years after it agreed not to annex the Nissan plant site. Dkt. 25, Ex. B.

The following authorities clearly illustrate that Canton's non-annexation agreement was voluntarily made and was not procedurally unconscionable. For example, the Mississippi Court of Appeals found a lack of knowledge and voluntariness in *Covington v. Griffin*, 19 So. 3d 805, 817 (Miss. App. 2009) when the defendant literally "was unaware she was signing a contract." However, in *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 458 (5th Cir. 2005), the Fifth Circuit found that that an employee "lacked neither knowledge nor voluntariness" in entering a separation agreement with her employer when the employee was represented by counsel. In *Fryar v. Sav-Amil, LLC*, the Northern District of Mississippi found that even when the plaintiff could not read, she did not lack "knowledge and voluntariness" in entering into a real estate contract because she could have had one of her children read the contract to her but chose not to. 2009 WL 4841041, *2 (N.D. Miss. 2009), *aff'd* 401 F. App'x 909 (5th Cir. 2010). The court further found that the plaintiff "had the opportunity to ask questions, have the documents read to

her, and walk out if she did not agree with the terms. The record is clear that she did not exercise those rights." *Id*. at *3. Thus, the district court found that the agreement was not procedurally unconscionable. Similarly, in the case of *In re Cooper*, 75 So. 3d 1104, 1105-08 (Miss. App. 2011), a wife challenged an antenuptial agreement she signed the day of the wedding. *Id*. The Mississippi Court of Appeals upheld the chancellor's finding that the wife voluntarily signed the agreement. The court found that being presented with an antenuptial agreement on the day of a wedding does not show "a lack of opportunity to study the contract and inquire about the contract terms." *Fryar*, 2009 WL 4841041 at *1. These cases demonstrate that when a party has the opportunity to read and study a contract and is represented by counsel, Mississippi courts will not find the agreement procedurally unconscionable.

Furthermore, the Mississippi Court of Appeals has disregarded the fine print or complex legalistic language factors when the party complaining is a corporation. It has held, "Requiring it to uphold the terms of a contract it entered into freely even if those terms were not specifically agreed upon by the parties is not unconscionable for a corporation [defendant] is expected to read the fine print." *Head & Engquist Equipment, L.L.C. v. Penelore Corp.*, 864 So. 2d 1025, 1030 (Miss. App. 2004). A municipality is a type of corporation. *City of Hazlehurst v. Mayes*, 51 So. 890, 890 (Miss. 1910) ("This city is a municipal corporation, operating under the Code chapter on municipalities"). Also, the Fifth Circuit has noted that municipalities are considered to be sophisticated parties. *See Hartford Fire Ins. Co. v. City of Mont Belvieu, Tex.*, 611 F.3d 289, 297 (5th Cir. 2010) ("The City of Mont Belvieu is a legally sophisticated party and, as a municipality, knowledgeable in Texas's law of public project bonds."); *cf. Holland/Blue Streak v. Barthelemy*, 849 F.2d 987, 990 (5th Cir. 1988) ("The court expects more careful and more

responsible briefing from counsel, particularly those who represent a major, presumably sophisticated municipality with far-reaching experience in civil rights cases.").

Here, Canton's agreement not to annex the Nissan plant site was voluntary. Canton was a sophisticated party (municipal corporation) represented by counsel. It was free to accept or reject any or all of the incentives proposed by the MDA. Canton was free to take as much time as required to make its decision. The resolutions setting forth the non-annexation agreement were official acts of a public body. Canton had control over its own resolutions. No one, other than Canton, had any power or authority to enter into the non-annexation agreement. The Court should rule as a matter of law that the agreement was not procedurally unconscionable and dismiss that claim with prejudice.

**B.      The Agreement is not Substantively Unconscionable.**

Canton also argues that it has received little benefit from its agreement thereby rendering it unconscionable. To determine substantive unconscionability, the Court must look within the four corners of the agreement. *Covenant Health & Rehabilitation of Picayune, LP v. Estate of Moulds ex rel. Braddock*, 14 So. 3d 695, 699-700 (Miss. 2009). "Substantive unconscionability is proven by oppressive contract terms such that there is a one-sided agreement whereby one party is deprived of all the benefits of the agreement or left without a remedy for another party's nonperformance or breach." *Covenant Health*, 14 So. 3d at 699-700.

Mississippi state and federal courts have upheld contracts with terms that are "less than desirable" but freely bargained for. *West v. West*, 891 So. 2d 203, 213 (Miss. 2004). For example, in *West*, the Mississippi Supreme Court held that an agreement to pay a large amount of alimony was a "begrudging but generous offer," not an agreement that "no spouse in his or her right mind would agree to." *Id.* In *TDK Accounting & Tax Services, LLC v. JPMorgan Chase*

*Bank, N.A.*, 2010 WL 1416209, *3-4 (S.D. Miss. 2010), the Southern District of Mississippi held that a forum selection clause that favored one party in a contract between two businesses was not substantively unconscionable. In *Farese*, the Fifth Circuit held that a separation agreement containing a non-disparagement clause was not one-sided because the other party "received numerous concessions." 423 F.3d at 458. In *Estate of Thomas v. U.S. Fidelity and Guar. Ins. Co.*, 2006 WL 839540, *5 (S.D. Miss. 2006), the court held that a workers' compensation settlement agreement was not one-sided even though the plaintiff testified that he "would never knowingly enter into an agreement that failed to provide for his mother and non-dependent adult siblings."

The test for substantive unconscionability does not focus on whether an agreement favors one party or the other, but whether one party is deprived of all the benefits of the agreement. Here, Canton has received tremendous benefits from the Nissan project. Nissan invested approximately $1 billion in private capital and created over 3,000 new jobs in the immediate vicinity of Canton. That capital investment has attracted numerous contractors, vendors and suppliers to the Canton area and created hundreds of additional jobs.

Further, as Canton concedes, Nissan has been paying substantial fees to the Canton Municipal School District for the benefit of Canton's public schools and citizens since 2003. The substantial economic and intangible benefits derived by Canton from the Nissan project are obvious. Canton clearly had a choice whether to enter into the non-annexation agreement and it received substantial benefits in return. The Court should decide this question of law in Nissan's favor and dismiss the unconscionability claim with prejudice.[3]

---

[3] Canton suggests that it provides certain municipal services "to the area in question." Even if such services are provided to the "area," they are not required by Canton's non-annexation agreement. The provision or non-provision of any such services is irrelevant to the question before the Court.

## IV. THE AGREEMENT WAS SUPPORTED BY SUFFICIENT CONSIDERATION

Canton argues that its non-annexation agreement lacks consideration. The Mississippi Supreme Court has defined consideration as "a return promise, bargained for and given in exchange for a promise." *City of Starkville v. 4-County Elec. Power Ass'n*, 819 So. 2d 1216, 1220 (Miss. 2002) (citing *Lowndes Co-Op Ass'n v. Lipsey*, 126 So. 2d 276, 277-78 (Miss. 1961)). Canton does not dispute that Nissan fulfilled its promise to invest approximately $1 billion in private capital and create over 3,000 new jobs for residents of the City of Canton, Madison County, and the State of Mississippi. Canton also concedes that, as promised, Nissan entered into an agreement to pay fees in lieu of ad valorem taxes for the support of the Canton Municipal School District. If any consideration was needed to support Canton's statutorily-authorized, non-annexation agreement, the investment of $1 billion, creation of over 3,000 jobs, and substantial payments to Canton's public schools satisfied that requirement.

## V. THE ACT DOES NOT VIOLATE THE VOTING RIGHTS ACT OF 1964

Canton finally argues that the Mississippi Legislature failed to obtain preclearance of Section 21-1-59(2) by the United States Department of Justice. Canton asserts that the failure to obtain preclearance renders the statute unenforceable. Canton's argument fails for several reasons.

First, Canton did not make a claim under the Voting Rights Act in either its original or First Amended Complaint. Canton asserted a Voting Rights claim for the first time in its Response Brief, which was filed after the expiration of the deadline for amendments to the pleadings. The deadline to file motions to amend the pleadings expired on August 22, 2011. As a result, the Court should rule that Canton waived the right to raise a claim under the Voting Rights Act. *See Gulf Coast Hotel-Motel Ass'n v. Mississippi Gulf Coast Golf Course Ass'n*,

2010 WL 3168032, *7 (S.D. Miss. 2010), *reversed on other grounds*, 658 F.3d 500, 506 (5th Cir. 2011) (matters not contained in complaint and raised for first time in response brief disallowed); *Monsanto Co. v. Scruggs*, 342 F. Supp. 2d 602, 607-08 (N.D. Miss. 2004) (the Fifth Circuit cautions "against permitting a claimant to change theories of recovery as a means of defeating summary judgment without first seeking leave to amend" the pleadings).

Second, Canton lacks standing to make a claim under the Voting Rights Act. Standing to sue under the Voting Rights Act is limited to the United States Attorney General and to "aggrieved persons," a category of persons whose voting rights have been denied or impaired. The City of Canton does not fall under either category and, therefore, lacks standing to sue under the Voting Rights Act. *See Conway School District v. Wilhoit*, 854 F. Supp. 1430, 1432-33 (E.D. Ark. 1994).

Next, Section 21-1-59(2) does not implicate the Voting Rights Act in any manner. Section 5 of the Voting Rights Act, codified at 42 U.S.C. § 1973, requires covered jurisdictions to seek preclearance from the United States Attorney General before it "shall enact or seek to administer any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964." Mississippi is a covered jurisdiction under 28 CFR § 51.4 and 28 CFR Pt. 51, Appx. Federal regulations list several guidelines for when an action or legislation needs to be precleared. 28 CFR § 51.13. All of the guidelines specifically relate to changes in the composition of the electorate or voting processes and methods. None of the guidelines relate to non-annexation agreements.

Canton concedes that there is "no change to the composition of the jurisdiction's electorate if annexation does not take place." Canton's Response Brief, p. 8. Since Canton agreed not to annex the Nissan plant site, there can be no change to Canton's electorate. Citing

*City of Pleasant Grove v. United States*, 479 U.S. 462 (1987), however, Canton suggests that "minority communities have a right to annexation." Canton's Response Brief, p. 8. In *Pleasant Grove*, an all-white city attempted to annex a white neighborhood and a vacant lot without annexing a neighboring minority neighborhood. The Court found that the plan to annex a block of white voters without annexing any minority voters was discriminatory and violated the Voting Rights Act. 479 U.S. at 471-72. There is nothing in *Pleasant Grove* to suggest that a municipality has a right under the Voting Rights Act to annex an industrial site that contains no residents.

The Voting Rights Act does not prohibit voluntary agreements not to annex industrial sites for economic development purposes. Canton's annexation of the Nissan plant site would not affect the voting rights of its electorate. The Nissan plant site is owned and controlled by Nissan. Nissan is not a "citizen" for voting purposes. The Fifteenth Amendment to the U.S. Constitution guarantees the right to vote to "citizens." The Fifth Circuit has noted: "In practically every case in which this point has been considered, from the early case of *Bank of the U.S. v. Deveaux*, 5 Cranch 61, 3 L. Ed. 38, the Supreme Court has said that a corporation is not a citizen within the meaning of the Constitution." *Atlantic SS Corp. v. Kelley*, 79 F.2d 339, 340 (5th Cir. 1935); *see also Citizens United v. Federal Election Com'n*, 130 S. Ct. 876, 930 (2010) (Stevens, J., dissenting) (corporations "cannot vote or run for office"); *In re Extension of the Boundaries of the City of Winona*, 879 So. 2d 966, 989 (Miss. 2004) (annexation of area with no residents and none reasonably anticipated had no impact, positive or negative, on the voting strength of a protected community).

Simply put, whether or not the Nissan plant site is annexed, there will be no change to the electorate of the City of Canton or the process or methods by which Canton's citizens vote. For

this reason, and others, Miss. Code Ann. § 21-1-59(2) does not implicate the Voting Rights Act and preclearance by the Department of Justice was not required.

## VI.   CONCLUSION

For the foregoing reasons, judgment should be entered in favor of Nissan on all claims asserted against it by the City of Canton and the First Amended Complaint should be dismissed with prejudice.  Further, all costs of this action should be assessed against the City of Canton.

This the 29th day of March, 2012.

>Respectfully submitted,
>
>**NISSAN NORTH AMERICA, INC.,**
>
>By Its Attorneys,
>**JONES, WALKER, WAECHTER, POITEVENT,
>CARRÈRE & DENÈGRE, L.L.P.**
>
>By:  /s/ *H. Mitchell Cowan*
>      H. MITCHELL COWAN

Samuel Jones (MSB No. 102600)
Senior Counsel
NISSAN NORTH AMERICA, INC.
One Nissan Way
P.O. Box 685001
Franklin, TN 37068-5001
Phone: 615-725-0752
Right Fax: 615-967-3849

H. Mitchell Cowan (MSB No. 7734)
Kaytie M. Pickett (MSB No. 103202)
JONES, WALKER, WAECHTER, POITEVENT,
CARRÈRE & DENÈGRE, L.L.P.
190 East Capitol Street
Suite 800 (39201)
Post Office Box 427
Jackson, MS 39205-0427
Telephone: (601) 949-4900
Facsimile: (601) 949-4804
mcowan@joneswalker.com
kpickett@joneswalker.com

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

Barbra Martin Blackmon, Esq.
Edward E. Blackmon, Esq.
Janessa Blackmon, Esq.
BLACKMON & BLACKMON, PLLC
907 West Peace Street
P.O. Drawer 105
Canton, Mississippi 39046

Harold E. Pizzetta, III
Justin L. Matheny
Office of the Attorney General
P.O. Box 220
Jackson, MS 39205

This, the 29th day of March, 2012.

/s/ *H. Mitchell Cowan*
H. MITCHELL COWAN