IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

| | |
|---|---|
| CITY OF CANTON, MAYOR WILLIAM TRULY, JR., ALDERWOMAN ALICE SCOTT, AND ALDERMEN RODRIGUEZ BROWN, BILLY MYERS, CHARLES WEEMS, LOUIS SMITH, REUBEN MYERS, AND ERIC GILKEY | PLAINTIFFS |
| V. | CAUSE NO. 3:11-CV-00318-CWR-LRA |
| NISSAN NORTH AMERICA, INC. | DEFENDANT |
| AND | |
| JIM HOOD, ATTORNEY GENERAL FOR THE STATE OF MISSISSIPPI, EX REL. THE STATE OF MISSISSIPPI | INTERVENOR |

## ORDER OF DISMISSAL

The above-styled cause is before the Court on the motions to dismiss of defendant Nissan North America, Inc., and intervenor Attorney General Jim Hood. The Court has considered those motions, along with the parties' arguments in favor of and in opposition to the requests, as well as governing authority relevant to the dispute. After due deliberation, the Court has concluded that the motions must be granted and that the case must be dismissed with prejudice.

## FACTS

On November 6, 2000, James C. Burns of the Mississippi Development Authority notified Canton Mayor Alice M. Scott by letter that "a major industrial client" was considering building a manufacturing plant at a site near her city. Burns explained:

> The client has invoked one of the most strict [*sic*] confidentiality rules for the project that we have seen and largely directed who could or could not be contacted regarding

the project.

> I am aware that you were frustrated regarding your personal level of knowledge regarding this project. I am sorry for that, but I hope you will understand that our main mission was to secure the project for Mississippi. Obviously, because of the location, Madison County and the City of Canton will derive a great deal of direct benefit should this project locate in the metro area.
>
> Over the last few months we have been in negotiation with the company regarding a broad array of incentives. Most of the incentives involve state and county. However, there are some incentives that will involve the city and I would like to discuss these areas with you.[1]

The letter asked Mayor Scott to facilitate the agreement in seven specific ways, one of which was to

> ask the City of Canton to agree to the provisions outlined in the attached House Bill 1 adopted on November 6, 2000 and signed by Governor Musgrove. Specifically, the provisions of this bill give the City of Canton the authority to agree and to bind further city mayors and alderman [*sic*] to a thirty year moratorium on any annexation of the primary project site for that project known as Project Delta. Further, under this authorization the Project Delta primary site could not be annexed at any time during this thirty year period of time unless the project officials request the City of Canton in writing to annex the primary site.[2]

As Burns' letter indicated, on that same day, the Mississippi Legislature passed House Bill 1 of its third extraordinary session. Section 18 of that legislation amended Section 21-1-59 of the Mississippi Code to provide that

> [t]he governing authorities of a municipality may enter into an agreement with an enterprise operating a project as defined in Section 57-75-5(f)(iv)1[3] providing that

---

[1] Exhibit B to Complaint (hereinafter "Burns Letter") at 1 [Docket No. 4 at 12].

[2] Burns Letter at 2.

[3] Section 57-75-5(f) is contained within the Mississippi Major Economic Impact Act and contains several definitions of the term "project." One such definition is memorialized at Subsection (f)(iv)1 so that the term includes "[a]ny major capital project with an initial capital investment from private sources of not less than Seven Hundred Fifty Million Dollars

the municipality shall not change its boundaries so as to include within the limits of such municipality the project site of such a project unless consent thereto shall be obtained in writing from the enterprise operating the project. Such agreement may be for a period not to exceed thirty (30) years. Such agreement shall be binding on future governing authorities of such municipality.[4]

The City of Canton responded quickly – within twenty-four hours. On November 7, 2000, the Board of Aldermen met to take up a measure addressing the Mississippi Development Authority's requests and, in particular, the specific issue of the City of Canton agreeing that it would not change its boundaries for a period of 30 years to include the project site. The measure is styled a "resolution" and recognizes that, under House Bill 1 adopted by the Mississippi Legislature a day earlier,

> a municipality is authorized to agree that said municipality will not change its boundaries for a period of up to thirty (30) years so as to include within the limits of such municipality the site of a project, as defined in Sections 57-75-5(f)(iv)1 and 57-75-5(g) of the Mississippi Code . . . unless consent thereto shall be obtained in writing from the enterprise operating the Project[.][5]

After delineating a series of specific findings, including the City's "anticipat[ion]" that Nissan North America, Inc. (hereinafter "Nissan"), the new industrial client, "will operate a Project in Madison County presently located outside the corporate boundaries of the City of Canton, Mississippi,"[6] and "will agree to pay to the Municipality a fee in lieu of ad valorem

---

($750,000,000.00) which will create at least three thousand (3,000) jobs meeting criteria established by the Mississippi Development Authority." The City does not contend that the Nissan project failed to meet these requirements.

[4] 2000 Miss. Laws 3rd Ex. Sess. Ch. 1 (H.B. 1) (hereinafter "House Bill 1").

[5] Exhibit A to Complaint at 1 [Docket No. 4 at 9] (hereinafter "November 2000 Resolution").

[6] November 2000 Resolution at 1.

taxes, which payment shall be for Canton Municipal School District purposes,"[7] the measure reads:

> NOW, THEREFORE, BE IT RESOLVED BY THE GOVERNING BODY, AS FOLLOWS:
>
> SECTION 1. The Governing Body of the Municipality hereby agrees that the Municipality will not change its boundaries for a period of at least thirty (30) years from the date hereof so as to include within the corporate limits of the Municipality the site of the Project which is anticipated to be operated by [Nissan], its successors and assigns, unless consent thereto shall be obtained in writing from the Company, its successors and assigns.
>
> SECTION 2. This resolution shall constitute an "agreement" as that term is used in Section 18(2) of [House Bill 1].
>
> SECTION 3. This resolution may not be revoked without the consent of the operator of the Project.
>
> SECTION 4. All prior orders, resolutions or proceedings of the Governing Body in conflict with the provisions of this resolution are hereby repealed, rescinded and set aside, but only to the extent of such conflict. For cause, this resolution shall become effective immediately upon the adoption thereof.[8]

The measure was adopted by a unanimous vote. In time, Nissan constructed the plant in Madison County, where it continues to operate today.

Many years later, the City of Canton's Board of Aldermen and Mayor assembled at a special call meeting on February 11, 2011. According to the minutes of that meeting, "[t]here came on for consideration before the Mayor and Board the matter of seeking a declaratory judgment to clarify whether successors are bound by agreement predecessors' [*sic*] made

---

[7] November 2000 Resolution at 1.

[8] November 2000 Resolution at 2.

between the City of Canton and Nissan's exemption from annexation for a period of 30 years."[9]

By a vote of 3-1, with three aldermen absent, the Board agreed to seek such a determination.

On May 3, 2011, the City of Canton (hereinafter "Canton" or "the City"), by and through its mayor and seven aldermen, filed suit against Nissan in Madison County Circuit Court seeking a declaratory judgment as to 12 separate questions:

a. Whether the governing authorities of Canton, Mississippi can bind their successors in office beyond their terms of office by resolution and/or contract prohibiting the municipality of Canton from annexing the site of a project as defined by Sections 57-75-5(f) and 57-75-5(g) of the Mississippi Code of 1972, as amended, also known as the "Nissan Project," thereby taking away from them rights and responsibilities conferred by law.
b. Whether House Bill Number 1, Section 18(2) is violative of the Fourteenth Amendment's Equal [P]rotection Clause and the Mississippi Constitution's equivalent found in Article 3, Section 14, which provides that "no person shall be deprived of life, liberty, or property except by due process of law." Miss. Const. Art. 3, Section 14.
c. Whether the agreement between the City of Canton and Nissan North America is ultra vires and unenforceable.
d. Whether House Bill Number 1 of the third extraordinary session, 2000, singles out the City of Canton, MS with language that appears on its face to be general legislation, but in its application subjects only the City of Canton, MS to separate and disparate treatment in violation of the Equal Protection Clause of the 14th Amendment, and the Due Process Clause of the 5th Amendment to the U.S. Constitution.
e. Whether House Bill Number 1 of the third extraordinary session, 2000 violates the Constitution of the State of Mississippi § 87.
f. Whether House Bill Number 1 of the third extraordinary session, 2000 violates the Constitution of the State of Mississippi § 90(h).
g. Whether House Bill Number 1 of the third extraordinary session, 2000 violates due process and equal protection clauses of the U.S. Constitution.
h. Whether the authority vested in the municipality in Section 21-1-7 cannot by contract or agreement, be prohibited beyond the term of office of the elected municipal officers.
I. Whether, enforcement of House Bill Number 1 of the third extraordinary session, 2000 will allow a former governing body to perpetuate its policies

---

[9] Exhibit C to Complaint at 2 [Docket No. 4 at 14] (hereinafter "February 2011 Minutes").

        beyond its terms and thereby limit a successor governing body's ability to respond to the public's changing needs, which is contrary to law and public policy.
j. Whether the agreement between the City of Canton and Nissan North America which restricts the City of Canton's free exercise of a discretion vested by law is contrary to public policy and law, and utterly null and void.
k. Whether the agreement between the [C]ity of Canton and Nissan North America is contrary to public policy, and utterly null and void.
l. Whether the agreement between the [C]ity of Canton and Nissan lacks adequate consideration and is thereby in violation of the Constitution of the State of Mississippi §96, and/or is unconscionable and thereby unenforceable.[10]

On June 1, 2011, Nissan removed the case[11] to federal court, and the City did not oppose that effort. On June 20, 2011, Mississippi Attorney General Jim Hood moved to intervene,[12] and the magistrate judge granted the motion that same day.[13]

Discovery ensued, and on February 20, 2012, Nissan[14] and Attorney General Hood[15] both

---

[10] Exhibit C to Notice of Removal at 1 [Docket No. 1-3] (First Amended Complaint at 4-6).

[11] Notice of Removal [Docket No. 1]. Specifically, Nissan invoked diversity jurisdiction pursuant to Title 28, Section 1332 of the United States Code, and federal-question jurisdiction pursuant to Title 28, Section 1331 of the United States Code. The existence of a federal question is clear; of the 12 questions addressed by the City's Amended Complaint, three explicitly invoke the United States Constitution. First Amended Complaint at 4-6.

[12] Attorney General's Unopposed Motion to Intervene [Docket No. 5]. Rule 24(b)(2)(a) of the Federal Rules of Civil Procedure establishes that a court "may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on a statute or executive order administered by the officer or agency[.]" See also Miss. Code Ann. § 7-5-1 (the Attorney General, the chief legal officer for the state, who is responsible for managing all litigation on behalf of the state, shall intervene and argue the constitutionality of any statute).

[13] Order [Docket No. 6].

[14] Defendant Nissan North America, Inc.'s Motion for Judgment on the Pleadings [Docket No. 25].

[15] The State of Mississippi's Motion for Summary Judgment [Docket No. 27].

6

moved for judgment as a matter of law. Although the motions are not identical, both argue that each of the City's claims is invalid as a matter of law and that the case should be dismissed with prejudice.

The City responded in opposition on March 16, 2012,[16] and in its briefs, it addressed just four issues: whether House Bill 1 violates the Fourteenth Amendment to the United States Constitution,[17] whether House Bill 1 violates Section 87 of the Mississippi Constitution,[18] whether the City of Canton's November 2000 resolution was an unconscionable agreement,[19] and whether House Bill 1 is legally unenforceable due to a failure to obtain preclearance under Section 5 of the Voting Rights Act of 1965.[20]

## STANDARD OF REVIEW

A motion for judgment on the pleadings, as established by Rule 12(c) of the Federal Rules of Civil Procedure, and a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure are distinct but related creatures. A court reviewing a Rule 12(c) motion applies the same test as it would when reviewing a motion under Rule 12(b)(6) – that is, the court reviews the pleadings to determine whether they "contain sufficient factual matter, accepted as

---

[16] Plaintiffs' Memorandum of Authorities in Support of Their Opposition to the State of Mississippi's Motion for Summary Judgment [Docket No. 35] (hereinafter "Canton's First Brief"); Plaintiffs' Memorandum of Authorities in Support of Their Opposition to Defendant Nissan North America, Inc.'s Motion for Judgment on the Pleadings [Docket No. 37] (hereinafter "Canton's Second Brief").

[17] Canton's First Brief at 5; Canton's Second Brief at 4.

[18] Canton's First Brief at 6.

[19] Canton's First Brief at 7; Canton's Second Brief at 5.

[20] Canton's First Brief at 9; Canton's Second Brief at 8.

true, to state a claim to relief that is plausible on its face."[21] The plaintiff's factual allegations must be "enough to raise a right to relief above the speculative level."[22]

A motion for summary judgment, on the other hand, reviews not only the pleadings but also all evidence offered in support thereof. Rule 56 establishes that, after reviewing that evidence in the light most favorable to the non-moving party, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[23]

Both judgment on the pleadings and summary judgment are useful tools, but either one "must be employed cautiously because it is a final adjudication on the merits."[24] However, "where the relevant facts are not in dispute, and the disagreement at hand regards only questions of law, summary disposition is appropriate."[25]

## ANALYSIS

As an initial matter, the Court holds that all claims pled by the City in the Amended Complaint but not addressed in its responses to the dispositive motions have been waived.

---

[21] *Oceanic Exploration Co. v. Phillips Petroleum Co. ZOC*, 352 Fed Appx. 945, 950 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[22] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[23] Fed. R. Civ. P. 56(a).

[24] *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989).

[25] *Canal Ins. Co. v. Owens*, 2011 WL 4833045, *2 (S.D. Miss. Oct. 12, 2011) (citing *Nabers v. Morgan*, 2011 WL 359069, *3 (S.D. Miss. Feb. 2, 2011)).

"Failure to address a claim results in the abandonment thereof."[26]

Additionally, the Court declines to address the issue of Section 5 preclearance. The Amended Complaint makes no mention of the Voting Rights Act or its requirement that the Department of Justice preclear changes to any standard, practice, or procedure with respect to voting.[27] "A claim which is not raised in the complaint, but, rather, is raised only in response to a motion for summary judgment is not properly before the court."[28]

Therefore, the Court addresses only (1.) whether House Bill 1 violates the Fourteenth Amendment, (2.) whether House Bill 1 violates Section 87 of the Mississippi Constitution, and (3.) whether the November 2000 Resolution was an unconscionable agreement.

**Whether House Bill 1 Violates the Fourteenth Amendment.** Section 1 of the Fourteenth Amendment provides, in relevant part, that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law[,] nor deny to any person within its jurisdiction the equal protection of the laws." Although the Amendment contains two noteworthy provisions – the Due Process Clause and the Equal Protection Clause – only the latter draws the City's attention. Specifically, the City[29] argues that House Bill 1 violates the Equal Protection

---

[26] *Sanders v. Sailormen, Inc.*, 2012 WL 663021 (S.D. Miss. Feb. 28, 2012) (citing *In re Entringer Bakeries, Inc.*, 584 F.3d 344, 347 n.1 (5th Cir. 2008)).

[27] See *Lopez v. City of Houston*, 617 F.3d 336, 340 (5th Cir. 2010).

[28] *Cutrera v. Bd. of Supervisors of Louisiana State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005).

[29] This lawsuit was initiated by the City and its Mayor and alderpersons in their official capacities only; therefore, resolution of this claim turns on the status and rights of the City. See *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

Clause by treating the City differently than other municipalities.[30]

However, the City has no standing to raise such a claim. "Being but creatures of the State, municipal corporations have no standing to invoke . . . the provisions of the Fourteenth Amendment of the Constitution in opposition to the will of their creator."[31]

Therefore, the Court finds that the City of Canton has no standing to challenge House Bill 1 on the basis of the Fourteenth Amendment.

**Whether House Bill 1 Violates Section 87 of the Mississippi Constitution.** Section 87 of the Mississippi Constitution establishes that, as a matter of state law,

> [n]o special or local law shall be enacted for the benefit of individuals or corporations, in cases which are or can be provided for by general law, or where the relief sought can be given by any court of this State; nor shall the operation of any general law be suspended by the Legislature for the benefit of any individual or private corporation or association, and in all cases where a general law can be made applicable, and would be advantageous, no special law shall be enacted.

In its motion for judgment on the pleadings, Nissan argues that not only is House Bill 1 not a "special or local law . . . enacted for the benefit of individuals or corporations," but that in fact it is not a local law at all but is, rather, a general law. The Mississippi Supreme Court has written that "[a] law is classified as general when it operates uniformly on all members of a class of persons, places or things requiring legislation peculiar to that class."[32] To put it another way,

---

[30] Canton's First Brief at 5.

[31] *Coleman v. Miller*, 307 U.S. 433, 441 (1939) (cited by *Town of Ball v. Rapides Parish Police Jury*, 746 F.2d 1049, 1051 n.1 (5th Cir. 1984). See also *Appling Cnty. v. Mun. Elec. Auth. of Georgia*, 621 F.2d 1301, 1308 (5th Cir. 1980) ("[A] city or county cannot challenge a state statute on federal Constitutional grounds."); *State v. Hinds Cnty. Bd. of Supervisors*, 635 So. 2d 829, 843 (Miss. 1994) ("political subdivision of a state have no . . . Fourteenth Amendment protections against the state") (citations omitted).

[32] *Sec'y of State v. Wiesenberg*, 633 So. 2d 983, 995 (Miss. 1994).

"[w]here a law is broad enough to reach every portion of the state and to embrace within its provision every person or thing distinguished by characteristics sufficiently marked and important to make them clearly a class by themselves, it is not a special or local, but a general, law, even though there may be but one member of the class or one place in which it operates."[33]

In apparent concession that House Bill 1 fits this description, the City argues that although the statute "appears to be general legislation,"[34] evidence demonstrates that Section 21-1-59(2) is, in truth, a special law. Specifically, the City contends that the statute is a special law because the legislation was drawn up and passed to address Nissan's impending move to Madison County and for no other reason.[35] But even if that is true, it does not prove the City's point. The Mississippi Supreme Court has held that a law may be a general law "even though there may be but one member of the class or one place in which [the statute] operates."[36] So long as the statute is drawn in such a way that it operates uniformly in every corner of the state, it is a general law.

A review of Section 21-1-59(2) provides no indication that it would not apply with equal force anywhere else in the state, so long as its prerequisites are satisfied.[37] Therefore, the Court

---

[33] *Vardaman v. McBee*, 198 Miss. 251, 258 (1945).

[34] Canton's First Brief at 6.

[35] "[I]t is evident that this Bill was designed for the specific purpose of furthering the negotiations that had occurred in an effort to bring the Defendant to the State of Mississippi and in doing so enabling [*sic*] the City of Canton's ability to annex for some 30 years." Canton's First Brief at 7.

[36] *Vardaman*, 198 Miss. at 258.

[37] See Miss. Code Ann. 57-75-5(f) (definition of "project").

11

holds that House Bill 1 is not a special law but is, rather, a general law that does not violate Section 87 of the Mississippi Constitution.

**Whether the November 2000 Resolution Amounts to an Unconscionable Agreement.** Finally, the City argues that its November 2000 Resolution consummated a contract that is unenforceable because it is unconscionable, lacks consideration, and is a contract of adhesion.[38] The Court rejects each of these claims.

First, the agreement is not unconscionable. Unconscionability is "an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to the other party."[39] In Mississippi, "[u]nconscionability can be procedural or substantive."[40] The burden of proving a contract's unconscionability rests with the party seeking to nullify the agreement.[41] An inquiry into whether a contract is unconscionable is a question of law.[42]

"Procedural unconscionability may be proved by showing a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the

---

[38] Canton's Second Brief at 5-8.

[39] *East Ford, Inc. v. Taylor*, 826 So. 2d 709, 715 (Miss. 2002).

[40] *Covenant Health & Rehab. of Picayune, LP v. Estate of Moulds*, 14 So. 3d 695, 699 (Miss. 2009).

[41] See *Entergy Mississippi, Inc. v. Burdette Gin Co.*, 726 So. 2d 1202, 1207 (Miss. 1998).

[42] *Norwest Fin. Servs. Inc. v. McDonald*, 905 So. 2d 1187, 1192 (Miss. 2005).

contract and inquire about the contract terms."[43] But where a contract was signed "willingly, knowingly, and voluntarily,"[44] it is not unconscionable.

The City's arguments regarding unconscionability do not make clear whether it attacks the agreement's procedure or its substance, but the City makes apparent its dissatisfaction with the timeline of the events of November 2000.[45] Following what the City describes as "months . . . to research, investigate and negotiate terms which were most beneficial to promoting its objectives,"[46] Nissan received the benefit of the November 2000 Resolution's passage within a day of the enactment of House Bill 1. In the City's view, this disparity demonstrates an unconscionability.

But a quick decision does not in and of itself evince an unconscionable agreement; rather, the haste of assent must demonstrate that the contract was not entered into willingly, knowingly, and voluntarily.[47] The circumstances of this case simply do not paint such a picture. After the passage of House Bill 1, the City was permitted but was not required to act under its authority. The Mississippi Development Authority's November 6, 2000, letter to then-Mayor Scott[48] clearly

---

[43] *Citigroup Global Markets, Inc. v. Braswell*, 57 So. 3d 638, 645 (Miss. Ct. App. 2011).

[44] *Community Care Center of Vicksburg, LLC v. Mason*, 966 So. 2d 220, 230 (Miss. Ct. App. 2007).

[45] This great dissatisfaction became obvious at the special call meeting, presumably since the City authorized the filing of the instant action. The record belies any dissatisfaction prior to the deal being closed.

[46] Canton's First Brief at 9.

[47] *Mason*, 966 So. 2d at 230.

[48] *Supra* at n.1.

asked the City to invoke its new authority, but MDA did not (and could not) require the City to do so. Indeed, it could have declined the offer or bargained for more consideration. Instead, one day later, the City drafted the terms of and adopted the November 2000 Resolution. These facts fall far short of proving that the City acted out of a lack of meaningful choice.

In contrast to procedural unconscionability, which relates to the circumstances under which one enters into a contract, substantive unconscionability relates to the terms of the agreement. "Substantive unconscionability is present when there is a one-sided agreement whereby one party is deprived of all the benefits of the agreement . . . ."[49] "Substantive unconscionability may be proven by showing the terms of the [agreement] to be oppressive."[50]

Again, the facts do not support the City's argument. The City admitted in its Amended Complaint that, in lieu of *ad valorem* taxes, Nissan would remit a fee to the City.[51] Therefore, the agreement is not altogether one-sided with the City deprived of *all* benefits.[52] It may be that the City of Canton, as it is constituted in 2012, wishes that its predecessors had made a better deal, but that is not the question at hand. The question is whether the agreement is so one-sided as to be illegally oppressive, and that question can be answered only in the negative. Therefore, the

---

[49] *Vicksburg Partners, L.P. v. Stephens*, 911 So. 2d 507, 521 (Miss. 2005) (overruled on other grounds by *Estate of Moulds*, 14 So. 3d at 706).

[50] *East Ford*, 826 So. 2d at 714.

[51] *Supra* at n.7; Exhibit B to Nissan's Motion for Judgment on the Pleadings [Docket No. 25-2] (hereinafter "Agreement to Make Payments in Lieu of Ad Valorem Taxes").

[52] To be clear, the City received other incentives as well. Among other things, the City was to rceive a fee for the use of a portion of its multipurpose building for a six-month period, and it would receive $1 million for the purpose of building and equipping a new fire station. See *supra* at n.1. Consequently, there was adequate, substantial consideration.

Court finds that the agreement is not substantive unconscionable.

This same remittal demonstrates that the agreement does not lack mutual consideration. Therefore, the Court holds that the agreement is not unenforceable for lack of mutual consideration.

Finally, the Court declines to dissolve the agreement based on the City's argument that the agreement is a contract of adhesion. Under Mississippi law, "[c]ontracts of adhesion are those that are drafted unilaterally by the dominant party and then presented on a 'take-it-or-leave-it' basis to the weaker party who has no real opportunity to bargain about its terms."[53] By definition, a party that takes part in the drafting of the agreement's terms does not face a contract of adhesion. The fact that the City drafted its own assent to the agreement – namely, the November 2000 Resolution – counsels strongly against a finding that the agreement amounts to a contract of adhesion.

But even if the City could prove that the agreement were one of adhesion, that fact alone would not establish that the agreement is unenforceable, because "a contract of adhesion is not unconscionable *per se*."[54] Even if a party demonstrates the existence of a contract of adhesion, "[i]t is essential that the evidence show a lack of knowledge or voluntariness by the weaker party."[55] As heretofore discussed, the City simply has not made such a showing.

Therefore, the Court holds that the City has not shown that its agreement not to annex is

---

[53] *Estate of Moulds*, 14 So. 3d at 701 (quotations omitted).

[54] *Forest Hill Nursing Ctr., Inc. v. McFarlan*, 995 So. 2d 775, 784 (Miss. Ct. App. 2008) (citing *Stephens*, 911 So. 2d at 520).

[55] *Id.*

an unenforceable contract of adhesion.

## **CONCLUSION**

None of the pled, non-waived arguments offered by the City persuades against granting the two dispositive motions. The City has no standing to argue that House Bill 1 violates the Fourteenth Amendment, and the City has failed to show that House Bill 1 violates Section 87 of the Mississippi Constitution. Likewise, the City has not shown that its agreement with Nissan is unenforceable under Mississippi contract law.

Therefore, the Court grants Nissan's motion for summary judgment and Attorney General Jim Hood's motion for judgment on the pleadings. A final judgment will be entered on this day to dismiss all of the City's claims with prejudice.

SO ORDERED this First day of May 2012.

                                                    /s/ *Carlton W. Reeves*
                                                  Hon. Carlton W. Reeves
                                                  United States District Court Judge